[S. F. No. 10830. In Bank.—June 11, 1924.]

## STATE COMPENSATION INSURANCE FUND, Petitioner, v. INDUSTRIAL ACCIDENT COMMISSION et al., Respondents.

[1] WORKMEN'S COMPENSATION ACT—PECULIAR EXPOSURE—CHARACTER OF RISK.—Where the employment itself involves peculiar and abnormal exposure to a common peril, which peculiar exposure is annexed as a risk incidental to the employment, the risk is incidental to the employment within the meaning of the compensation statutes.

[2] ID.—PLACE OF ACCIDENT—RELATION TO EMPLOYMENT.—The fact that the accident happens upon a public road or at a railroad crossing, and that the danger is one to which the general public is likewise exposed, is not conclusive against the existence of such causal relationship if the danger be one to which the employee, by reason of and in connection with his employment, is subject peculiarly or to an abnormal degree.

[3] ID.—INJURY TO HOTEL MAID—CAUSAL CONNECTION BETWEEN INJURY AND EMPLOYMENT—EVIDENCE.—There is a direct causal connection between an injury received by a maid employed at a hotel by falling while leaving the servants' entrance and her employment by the hotel, where the injury directly resulted from the condition of the entrance to the hotel premises which, under the regulations

---

3. Injury to employee while on the street as an injury arising out of and in the course of the employment, notes, Ann. Cas. 1913C, 24; Ann. Cas. 1914B, 503; L. R. A. 1916A, 314; L. R. A. 1917D, 114; L. R. A. 1918F, 911.

governing her employment, the maid was compelled to use, and which caused her to get her feet wet, combined with her natural effort to avoid the water and slush upon the runway immediately adjacent to said entrance, which water and slush had been placed there by employees of the hotel.

[4] ID.—PERFORMANCE OF SERVICES IN COURSE OF AND INCIDENTAL TO EMPLOYMENT—EVIDENCE.—A maid employed by a hotel who was injured by falling while leaving the servants' entrance to the hotel on a personal errand on her "day off," was in the course of her employment and performing services growing out of and incidental to such employment at the time of her injury, where the regulations of the hotel required the servants to use the entrance in question, and the contract of employment required her to live on the hotel premises and have her meals there, which meals and lodging were part of her compensation for her services.

(1) Workmen's Compensation Acts, p. 77, sec. 67. (2) Workmen's Compensation Acts, p. 77, sec. 67. (3) Workmen's Compensation Acts, p. 77, sec. 67. (4) Workmen's Compensation Acts, p. 84, sec. 74.

PROCEEDING in Certiorari to annul an order of the Industrial Accident Commission awarding compensation. Award affirmed.

The facts are stated in the opinion of the court.

F. J. Creede, T. W. Slaven and B. E. Pemberton for Petitioner.

Annette Abbott Adams and Warren H. Pillsbury for Respondents.

LANGDON, J., *pro tem.*—The petitioner, State Compensation Insurance Fund, is the insurance carrier for the Fairmont Hotel. It is here seeking annulment of an award made by the respondent Industrial Accident Commission to the other respondent, Florence R. Glennan, a maid employed in and living at the hotel, who was injured by a fall while leaving the premises by the servants' entrance. The accident was caused by unsafe conditions of the entrance and adjacent runway across the sidewalk, created by employees of the hotel in the discharge of their duties. The maid was not on duty at the time, but was leaving the building for a personal errand on her "day off." It is the contention of the petitioner that at the time the employee sustained the

injury on which the award was based she was not performing any service, either growing out of or incidental to her employment, and was not at the time acting within the scope of her employment.

Maids employed at the Fairmont were not compelled, as is the case in some hotels, to live in the building. When respondent Glennan applied to the hotel management for employment she was offered two forms of contract, either of which she was at liberty to accept. Under the terms of one she could enter the employment, be paid a flat wage of fifty dollars monthly, and lodge where she pleased. Under the other she would be given what is referred to in her testimony as "the protection of the building," lodgings in the hotel, and be paid forty dollars monthly. For the reason that it was more expensive for the maids to rent a room outside than to make an allowance of ten dollars monthly for one at the hotel, the respondent signed the form of contract which permitted her to live on the premises. Her wages were therein fixed at forty dollars a month, in addition to board and lodging, stipulated before the commission to be of the value of thirty dollars. The maids were not allowed to be in parts of the hotel where they were not employed, and in going to and from the building were required to use an entrance on the Sacramento Street side of the hotel, where the time-clock was located. Other than the requirement about the use of this entrance, maids were free to "come and go and do" as they pleased, provided they did their work and ate their meals within the hours provided.

At the time of the injury in question the entrance referred to was also used as a passageway for trucks. As it opened on to a sloping street, the cement walk between the building and the outer edge of the sidewalk was made rough, forming a sort of runway. On the day of the accident Miss Glennan started to leave the hotel at the required entrance, which she stated was used to take out ashes. She found other employees of the hotel "sweeping out the slush" and "washing out the entrance with soapy water." As she walked through the passageway her shoes became wet, and in stepping off the runway on the sidewalk, outside the entrance, in an attempt to avoid walking in the water thereon, her feet slipped and she fell, striking against a projection of the building, and received a severe injury to the base of the

spine. For this injury compensation was allowed her and the award was affirmed on rehearing before the respondent commission.

Some contention is made by petitioner that the injury did not arise out of the employment, as required by the statute, and this position is based upon the reasoning that as the injury to the applicant was sustained on the sidewalk on a public street, entirely outside the premises of the employer, it resulted from a hazard to which all the public was exposed and not from any peculiar or particular hazard to which the applicant was subjected by reason of her employment. Respondents, in reply to this contention, point out that the contract of employment in this case contemplated the use of the entrance and passageway where the injury occurred, as a necessary incident to the employment. [1] Where the employment itself involves peculiar and abnormal exposure to a common peril, which peculiar exposure is annexed as a risk incidental to the employment, it has been repeatedly held that the risk is incidental to the employment within the meaning of compensation statutes. (*Judson Mfg. Co. v. Industrial Acc. Com.*, 181 Cal. 300 [184 Pac. 1], and cases therein cited.) [2] The fact that the accident happens upon a public road or at a railroad crossing, and that the danger is one to which the general public is likewise exposed, is not conclusive against the existence of such causal relationship if the danger be one to which the employee, by reason of and in connection with his employment, is subjected peculiarly or to an abnormal degree. (*Cudahy Packing Co. v. Parramore*, 263 U. S. 418 [68 L. Ed. 366, 44 Sup. Ct. Rep. 153].)

[3] In the instant case there is a direct causal connection between the injury received by the employee and her employment by the hotel. The injury directly resulted from the condition of the entrance to the premises of the employer which, under the regulations governing her employment, Miss Glennan was compelled to use, which caused her to get her feet wet, combined with her natural effort to avoid the water and slush upon the runway immediately adjacent to said entrance, which water and slush had been placed there by employees of the hotel.

It seems clear, therefore, that the injury arose out of the employment. [4] But a more serious problem is en-

countered in the next contention of petitioner, which is that the injury did not occur in the course of the employment or while the employee was performing service incidental thereto. Upon this essential element of the case respondents rely upon a recent decision of this court in which it was held that a number of ranch hands who, by reason of the situation of the ranch and the nature of their employment, were compelled to sleep in the bunkhouse provided by the employer for their use, were in the course of their employment and performing a service incidental to the employment in which they engaged, at a time when they had completed their work and were in the bunkhouse waiting for supper. (*Larson* v. *Industrial Acc. Com.*, 193 Cal. 406 [224 Pac. 744].) Petitioner relies with equal confidence on another decision of this court (*Associated Oil Co.* v. *Industrial Acc. Com.*, 191 Cal. 557 [217 Pac. 744]). It is contended that this case is determinative against respondents because it is said therein that the test to be applied to situations where an employee is injured while upon the premises of the employer after working hours and because of the fact that he is living upon said premises, is "whether or not the workman is given a choice in the matter and is free as possible to come or go as he pleases." However, it was pointed out in said case, citing Schneider on Workmen's Compensation Law, that "The general rule appears to be that when the *contract of employment* contemplates that the employees *shall* (not must) sleep upon the premises of the employer, the employee, under such circumstances, is considered to be performing services growing out of and incidental to such employment during the time he is on the premises of the employer." And again, in said case, it was emphasized by the court that: "The men were not required to stay there and it was no part of the *contract of employment* that they should do so." And we think this is a vital distinguishing feature between this case and the instant case. In the instant case Miss Glennan, it is true, had a choice, when she applied for employment, of making a contract by which she would be paid fifty dollars a month and furnish her own room, or a contract by which she would receive forty dollars a month and accept a room in the hotel in lieu of the other ten dollars a month in wages. At the time she had this choice she had not entered upon her

status as an employee. It was a preliminary choice which she was given before entering upon the employment. When she had made her choice and signed the contract of employment by which she accepted a room in the hotel as part compensation for her labor, she then, and then only, sustained to the hotel the relationship of employee to employer; then her rights were fixed by contract, as were those of the hotel. It cannot be said, then, that she had any further choice. Her contract for employment was a monthly one, and she was bound during that month, at least, to accept a room in the hotel in lieu of ten dollars additional wages. She was under the compulsion of a contract obligation. It was a distinctive part of her contract of employment that she should occupy a room in the hotel. It was contemplated by the contract of employment that she should sleep in this room and that she should enter and leave the building by the servants' entrance. It was also contemplated by the contract that she was to have one "day off" each week, and, assuredly, it was implied in said contract that she should leave and enter the building by the servants' entrance upon that "day off." "An employee is in the 'course of his employment' when he does those reasonable things which his contract with his employment expressly or impliedly permits him to do." (*Novack* v. *Montgomery Ward & Co.* (Minn.), 198 N. W. 290, 292.)

Miss Glennan was to be furnished all of her meals at the hotel as a part of her compensation for her labor. It was a part of the express written contract creating her status as an employee that she should live at the hotel and receive her meals there. That was her residence solely because of her employment and she was upon the premises to sleep and eat her meals because room and meals were the exchange in which she was paid in part for her labor. She was in the course of her employment when she was collecting this remuneration, just as much as when she was performing the labor that earned the remuneration. The contract between the parties was reciprocal.

In the case of *Hackley etc. Co.* v. *Industrial Acc. Com.*, 165 Wis. 586 [162 N. W. 921], an employee of a lumber company had been working at one of its camps for some months, when he decided to give up his employment for a time and take a vacation. He so stated to his foreman and

194 Cal.—3

was given a statement of his time of service, to be used in collecting the money due him. It was necessary for him to go to the office of the company to collect his ''pay,'' and this was some distance from the camp and was reached by train. The employee was injured while riding on this train, which was furnished by the company as a conveyance for its employees. It was contended that the injury was not in the course of the employment, as the employee had definitely terminated his employment before leaving the camp. The court said: ''The essential elements of the contract of employment were that the employee should render services for the employer and in return therefor the employer should pay him an agreed compensation. The duty to pay and the right to receive the compensation were integral parts of the contract of employment. . . . So in going to get his pay he was but fulfilling a duty imposed upon him by the employer and using the means of conveyance which the employer furnished his employees for such purpose. . . . If we turn to the text-books and decided cases on this subject, we find that they sustain the view that an employee going in the usual manner for his pay to a place designated by the employer is performing a service within his employment. (1 Bradbury, W. C., 438; 1 Honnold, W. C., 356; *Lowery* v. *Sheffield Coal Co.,* 1 B. W. C. C. 1; *Nelson* v. *Belfast Corp.,* 1 B. W. C. C. 158; *Riley* v. *Golland & Sons,* 4 B. W. C. C. 155; *Re R. V. Phillips,* 1 Bull. Ind. Com. of Ohio 49.) In *Lowery* v. *Sheffield Coal Co., supra,* the facts were these: A collier left his work at 5 o'clock on a Saturday morning. At noon of the same day he went for his wages for a fortnight past. He went along a footpath which had been made by the employer for its workmen, and was going along the Great Central Railway Line, which ran through the employer's premises, when he was knocked down by an engine and injured. He was not going to resume work till the following Sunday night. The court held that the employee was entitled to compensation.'' The other cases cited and discussed in the opinion in the case of *Hackley etc. Co.* v. *Industrial Acc. Com., supra,* are directly in point here, because an analysis of the facts in the instant case discloses that the respondent Glennan, in sleeping in the room at the hotel, was but collecting a portion of her wages. The medium of exchange in which wages happen to be paid is a mere accidental cir-

cumstance and should not be permitted to cloud the issue. Here the respondent Glennan was to be paid, by the written express contract between the parties, forty dollars in money and thirty dollars in room and meals. She was collecting her wages when she came for her meals and when she occupied her room, just as much as when she called for the balance of her wages to be paid in cash. In occupying her room (collecting a portion of her wages) she incidentally used the entrance provided by the employer for that purpose. It would seem, upon principle, that her legal situation was precisely the same as if upon a day when she was not actually working for her employer—when she had a "day off" or for some other reason was not working—she had gone to his premises by the entrance designated by the employer to collect the portion of her wages to be paid in cash, and had been injured in the same place and manner as she was injured. In either instance, in the language of the decision in *Hackley etc. Co.* v. *Industrial Acc. Com., supra:* "The employee . . . was still performing a duty imposed upon him by his employer *and one necessary to perform before the terms of the contract of employment were mutually satisfied.*"

We think the foregoing discussion distinguishes this case from the "Jones case" (*Associated Oil Co.* v. *Industrial Acc. Com., supra*) upon principle, and that the instant case falls within the rule announced by this court that "when the *contract of employment* contemplates that the employees *shall* sleep upon the premises of the employer, the employee, under such circumstances, is considered to be performing services growing out of and incidental to such employment during the time he is on the premises of the employer." (*Associated Oil Co.* v. *Industrial Acc. Com., supra.*) There is involved here the same legal principle as in the case of *Larson* v. *Industrial Acc. Com., supra.* In the Larson case the employees were held to be in the course of their employment and performing a service incidental thereto when sleeping in a bunkhouse, because the situation of the ranch and the nature of their employment practically precluded them from living elsewhere. In the instant case, neither the situation of the hotel nor the nature of the employment demanded residence at the hotel, but the written contract under which the employee was working provided for such

residence as a partial payment for services. In the one case there was the compulsion of circumstances, and in the other, as we have stated, the compulsion of a written contract.

Applying the language of the Associated Oil Company case, *supra, i. e.:* "When the contract of employment contemplates that the employees shall sleep upon the premises of the employer, the employee, under such circumstances is considered to be performing services growing out of and incidental to such employment during the time he is on the premises of the employer," and applying, by analogy, the case of *Larson* v. *Industrial Acc. Com., supra,* to the facts of the instant case, we think the employee was in course of her employment and performing services growing out of and incidental to such employment when she was leaving her place of employment (her residence, also, by reason of her contract of employment, and furnished to her as part compensation for her labor under such contract) by the exit designated by the employer, to enjoy her "day off"—an intermission in her labor contemplated by said contract of employment.

The award of the Industrial Accident Commission is affirmed.

Richards, J., Lennon, J., Seawell, J., Lawlor, J., Shenk, J., and Myers, C. J., concurred.

Rehearing denied.

All the Justices concurred.