[Civ. No. 11242.   First Appellate District, Division One.—March 1, 1940.]

EMPLOYERS' LIABILITY ASSURANCE CORPORATION, Petitioner, v. INDUSTRIAL ACCIDENT COMMISSION and Mrs. GRACE BURNETT, Respondents.

Keith & Creede and Edmund D. Leonard for Petitioner.

Everett A. Corten for Respondents.

PETERS, P. J.—Petitioner, Employers' Liability Assurance Corporation, seeks by this proceeding to annul an award of the Industrial Accident Commission in favor of Grace Burnett who was injured while employed as a cook in the private residence of her employer, Chalmers G. Graham. Petitioner is the insurance carrier for Graham, who, though not required to do so at the time of the accident, had voluntarily insured his domestic servants.

The facts surrounding the employee's injury are not substantially in dispute. Mrs. Burnett, under her contract of employment, was required to live at her employer's residence, and, as part of her compensation, received her board and room. She was injured on Thursday, June 1, 1939. This was normally her "day off". Her employer customarily employed a maid, but the maid had left the employment the preceding Saturday, so that Mrs. Burnett's duties during this period were increased. She testified that, because of the absence of the maid, she worked on the day in question until 11 or 11:30 A. M., and told Mrs. Graham she would return early that evening to wash the dishes. She returned to her employer's residence a little before 8 P. M. She put an apron over her street dress, and washed the dinner dishes. She then retired to her room. She testified that she was then on call—that she would have answered the telephone or the doorbell, had the necessity arisen, and that she was expecting a call from her employer to take care of the Graham child. While she was waiting, she noticed that her dress was a little long. The mirror in her room was not adjustable. In order to more clearly observe the hem of the dress she stood on a stool. While engaged in shortening the dress she slipped and fell, fracturing her left ankle and dislocating her left elbow. The commission found that these injuries occurred in the course of, and arose out of, the employment, and made its award accordingly.

It is the theory of petitioner that the injury received by Mrs. Burnett did not arise out of the employment, nor

was it received in the course thereof; that to be compensable the injury must be received while the employee is engaged in some necessary act reasonably incidental to the employment; that, in the present case, the injury was received while performing a purely personal act, and is, therefore, not compensable.

Under section 3600 of the Labor Code, to be compensable, the injury must both arise out of, and be in the course of, the employment. In the present case there can be no doubt that the injury was received while the employee was in the course of her employment. Under the doctrine announced in *Larson* v. *Industrial Acc. Com.*, 193 Cal. 406 [224 Pac. 744], and *State Comp. Ins. Fund* v. *Indus. Acc. Com.*, 194 Cal. 28 [227 Pac. 168], where an employee is required to live on the employer's premises, any inquiry received while the employee is making a reasonable use of such premises is in the course of the employment, even though received during the employee's leisure time. The theory advanced in these cases is that board and room are part of the employee's compensation which is being earned at all times while the employee is on the premises, and that, therefore, the earning and collection of such compensation is as much a part of the employment as is the performance of service, and is reasonably incidental thereto. In the Larson case, *supra*, the injuries were received after normal working hours while the employees were resting in the bunkhouse when a fellow employee poured kerosene on the bunkhouse stove. It was held that the injury was received in the course of (and, under the facts there involved, also arose out of) the employment. In discussing the question whether the injury was received in the course of the employment the court quoted with approval from *Associated Oil Co.* v. *Industrial Acc. Com.*, 191 Cal. 557 [217 Pac. 744], as follows (193 Cal. at p. 410): " 'The general rule appears to be that when the contract of employment contemplates that the employees shall sleep upon the premises of the employer, the employee, under such circumstances, is considered to be performing services growing out of and incidental to such employment during the time he is on the premises of the employer. (1 Schneider's Workmen's Compensation Law, p. 608, par. 279.) . . . ' " This same rule was quoted and relied on in the case of *State Comp. Ins. Fund* v. *Indus. Acc. Com., supra*, at p. 32. In that case

a resident maid of the Fairmont Hotel was injured while leaving the hotel on her "day off". After holding that the particular injury arose out of the employment because of the peculiar hazard there involved, the court discussed at length the question whether such an injury was received in the course of the employment. The court quoted from, and discussed, several cases and then stated (p. 33) : "Miss Glennan was to be furnished all of her meals at the hotel as a part of her compensation for her labor. It was a part of the express written contract creating her status as an employee that she should live at the hotel and receive her meals there. That was her residence solely because of her employment and she was upon the premises to sleep and eat her meals because room and meals were the exchange in which she was paid in part for her labor. She was in the course of her employment when she was collecting this remuneration, just as much as when she was performing the labor that earned the remuneration. The contract between the parties was reciprocal."

Under these decisions there can be no doubt that the employee in the present case was in the course of her employment when injured. ■ The only debatable question is whether the injury can be said to have arisen out of the employment.

The mere fact that the employee was engaged in performing a personal act when injured does not, *per se*, determine that the injury did not arise out of the employment. In *Leffert* v. *Industrial Acc. Com.*, 219 Cal. 710 [28 Pac. (2d) 911], the commission denied liability to a salesman who was killed by an automobile while crossing the street on his way to the employer's plant to get his overcoat which was in a burning building. The Supreme Court reversed the commission and held that (p. 714) : "Leffert was, when injured, engaged in doing something he might reasonably have been expected to do while in the performance of his duty." In *Western Pac. R. R. Co.* v. *Indus. Acc. Com.*, 193 Cal. 413 [224 Pac. 754], compensation was allowed for the death of a messenger who was struck by an automobile while returning on his bicycle to his place of employment from his home where he had gone to get his raincoat. In *Whiting-Mead Co.* v. *Indus. Acc. Com.*, 178 Cal. 505 [173 Pac. 1105, 5 A. L. R. 1518], an award of compensation was affirmed where an employee had injured his hand while working for his employer,

and later, while lighting a cigarette, set fire to the bandage which had been soaked in turpentine. It was held that the act of smoking was reasonably contemplated by the employment, and, therefore, an injury so received was compensable. In this decision several cases from this and other jurisdictions are referred to with approval where injuries, though received while performing a personal act, were held to arise out of the employment. At page 506 these cases are referred to as follows: ''There are many decided cases which bear more or less directly upon the question here presented. In one of them (*Martin* v. *Lovibond & Sons,* 7 B. W. C. C. 243), a drayman employed by a firm of brewers was run down by an automobile and killed. His hours of employment were from 8 in the morning until 9 in the evening, or later. During his working hours he took no meals at home. On the day of his death he left his team at the side of the street and crossed the way for the purpose of refreshing himself at a public house with a glass of beer. He was in the public house about two minutes. While crossing the street to return to his dray he was killed. Compensation was allowed. In two cases (*Archibald* v. *Ott,* 77 W. Va. 448 [L. R. A. 1916D, 1013, 87 S. E. 791]; *Keenan* v. *Flemington Coal Co.,* 5 Sc. Sess. Cas., 5th series, 164, 10 Scott, L. T. 409), compensation was awarded for the result of accidents suffered while employees had left the actual performance of their work to procure drinking water. In another case (*Carinduff* v. *Gilmore,* 7 B. W. C. C. 981), a girl who was employed on the top of a threshing-machine stopped her work to partake of refreshment provided by her employer and suffered an injury while so engaged. Compensation was awarded. In one case (*Northwestern Iron Co.* v. *Industrial Accident Commission,* 160 Wis. 633 [152 N. W. 416]), it was held that an employee injured while warming himself during a labor which subjected him to the cold is entitled to compensation. In at least three cases (*Cook* v. *Manvers Main Collieries,* 7 B. W. C. C. 696; *Elliott* v. *Rex,* 6 B. W. C. C. 27; *Zabriskie* v. *Erie R. Co.,* 86 N. J. L. 266 [L. R. A. 1916A, 315, 92 Atl. 385]), compensation was allowed for injuries suffered by employees during absence from actual work in response to calls of nature. In a California case (*Brooklyn Min. Co.* v. *Industrial Accident Commission,* 172 Cal. 774 [159 Pac. 162]), a miner was proceeding from one working place in a mine to another, passing over the

surface of the ground from shaft to shaft in order to reach the second point. The day was very hot and he paused in the shade of an ore bin to rest. The bin collapsed and killed him. Compensation was awarded.''

There are other cases applying the same rule. In *Corpora* v. *Kansas City Public Service Co.*, 129 Kan. 690 [284 Pac. 818], an employee was awarded compensation for injuries received when he fell while changing from his street clothes to his working clothes. The Corpora case cites and relies upon the case of *In re Matermack*, (Ohio) 12 N. C. C. A. 665, where an employee threw his shoulder out of its socket while taking off his work shirt after working hours, and the case of *Thomas* v. *Proctor & Gamble Mfg. Co.*, 104 Kan. 432 [179 Pac. 372, 6 A. L. R. 1145], where an employee was injured while at play during the noon hour. In these cases it was held the injury arose out of the employment.

In Campbell's Workmen's Compensation, volume 1, pages 199–202, there are collected many cases illustrating the application of the rule that injuries received while performing a personal act are compensable if such act was reasonably contemplated by the employment. Among others, the following injuries have been held to be compensable as arising out of the employment: Injuries received while the employee is in or on the way to the lavatory; changing to or from working clothes; putting away personal belongings prior to the commencement of work; bathing; seeking shelter from the rain; getting a drink of water for a fellow employee or for himself; cooking his luncheon on his employer's stove; chopping wood for his own use; going for luncheon left in dressing room; answering a personal telephone call; drying hair, etc., etc.

It is true that there are cases from other states (some of which are collected by Campbell on pages 202, 203 of his work) denying liability under factual situations somewhat comparable to those set forth above. Petitioner refers to many of these cases. Typical of these cases is *Brienen* v. *Wisconsin Public Service Co.*, 166 Wis. 24 [163 N. W. 182], where an employee was denied compensation when injured while doing her personal laundry on her employer's premises after working hours. In *Kane* v. *Barbe*, 210 App. Div. 558 [206 N. Y. Supp. 444], a cook was injured while in her own room on her employer's premises after working hours when she fell out of a rocking chair while taking off her shoes. The

injury was held noncompensable. Other cases similar in nature could be referred to.

Some of the cases denying liability for injuries received while performing personal acts are based on the doctrine of strict construction of compensation acts. That doctrine has never been adopted in this state. Many of the apparently conflicting decisions are not in fact conflicting when analyzed. Each case must necessarily turn on its own facts. The true rule to be derived from the cases is that the injury is compensable if received while the employee is doing those reasonable things which his contract of employment expressly or impliedly authorizes him to do. (*State Comp. Ins. Fund* v. *Indus. Acc. Com.*, 194 Cal. 28 [227 Pac. 168]; *Hartford A. & I. Co.* v. *Industrial Acc. Com.*, 202 Cal. 688 [262 Pac. 309, 58 A. L. R. 1392].) In applying this rule California has adopted the doctrine first announced in *Archibald* v. *Ott*, 77 W. Va. 448 [87 S. E. 791, L. R. A. 1916D, 1013], and quoted with approval in *Whiting-Mead Co.* v. *Indus. Acc. Com.*, 178 Cal., at p. 507, as follows: " 'Such acts as are necessary to the life, comfort, and convenience of the servant while at work, though strictly personal to himself, and not acts of service, are incidental to the service, and injury sustained in the performance thereof is deemed to have arisen out of the employment. A man must breathe and occasionally drink water while at work. In these and other conceivable instances he ministers unto himself, but in a remote sense these acts contribute to the furtherance of his work. . . . ' That such acts will be done in the course of employment is necessarily contemplated, and they are inevitable incidents. Such dangers as attend them, therefore, are incidental dangers. At the same time injuries occasioned by them are accidents resulting from the employment."

If the particular act is reasonably contemplated by the employment, injuries received while performing it arise out of the employment, and are compensable. In determining whether a particular act is reasonably contemplated by the employment the nature of the act, the nature of the employment, the custom and usage of a particular employment, the terms of the contract of employment, and perhaps other factors should be considered. Any reasonable doubt as to whether the act is contemplated by the employment, in view of

this state's policy of liberal construction in favor of the employee, should be resolved in favor of the employee.

Applying this test to the instant case, we believe the act was reasonably contemplated by the employment. A household servant is in a different category from most other employees. Normally she does not work, and this particular employee did not work, during definite hours. She is always on call. The employment requires her to live on the premises. She must be neat in dress and general appearance. It is necessarily contemplated by the employment that she must perform personal acts such as she was here performing while she is in her room on call. The same rule cannot be applied to such an employee that would be applied to an employee such as a stenographer who works set hours and whose employment would not necessarily contemplate sewing or other adjustment of clothes during working hours. In the case of domestic servants it is normally one of the implied terms of the employment that the employee may, and shall, perform such tasks. They are incidental to, and arise out of, the very nature of the particular employment.

The award is affirmed.

Knight, J., and Ward, J., concurred.

An application to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on April 29, 1940.