[L. A. Nos. 19289, 19290. In Bank. June 8, 1945.]

PACIFIC INDEMNITY COMPANY (a Corporation), Petitioner, v. INDUSTRIAL ACCIDENT COMMISSION, SALOME VALLEZ et al., Respondents.

(Two Cases.)

510

Herlihy & Herlihy for Petitioner.

Everett A. Corten and R. C. McKellips for Respondents.

SPENCE, J.—Petitioner seeks to annul two separate awards made by the Industrial Accident Commission for the deaths of Tomas Vallez, age 12, and of his brother Adolfo Vallez, age 15, both of whom were drowned on the premises of their employer. It is urged by petitioner that the deaths did not arise out of, nor did they occur in the course of, the employment, and that therefore they are not compensable under the Workmen's Compensation Law. (Lab. Code, § 3600 (b), (c).)

Tomas and Adolfo Vallez resided in the family home with their parents, two brothers and four sisters. The two boys, and other members of their family, were employed by petitioner's assured as grape pickers on a piece-work basis. On Saturday, September 5, 1942, the two boys had picked grapes for their employer in the morning. All the grape pickers quit work that day at noon. At that time Tomas and Adolfo, ac-

companied by their sister, Margaret, and two friends, Chano
Silva and his brother—all fellow-workers—went by automo-
bile to the Vallez home, some few miles distant, to pick up
their work cards, which showed the amount of money due
them for the week. Chano testified that the boss told the
workers they would get their pay at the office "after 1
o'clock"; that they left the Vallez home on their return trip
about 12:30 p. m.; that on the way they stopped at about
12:40 p. m. at an irrigation reservoir, located on their em-
ployer's property about one-half mile from the office, to wash
their hands, face and feet as they "were dirty"; and that
they were then going on to get their pay. Adolfo and Chano
had finished their ablutions and were standing by their auto-
mobile when Tomas, then in the reservoir and unable to swim,
called for help. Both Adolfo and Chano plunged into the
reservoir in answer to the younger boy's cries; neither was
successful in the attempted rescue; and only Chano managed,
with the aid of an unidentified woman, to pull himself out of
the reservoir. Tomas and Adolfo were drowned. Chano's tes-
timony would indicate the drowning occurred within a few
minutes after he and the Vallez boys had arrived at the reser-
voir. There was other evidence indicating that the fatal acci-
dent occurred somewhat later. Except for being barefoot, the
boys were clothed when drowned. The commission found that
the two Vallez boys "sustained injury arising out of and
occurring in the course of [their] employment, proximately
resulting in [their] death on the same day"; and that they left
surviving, "partially dependent," their parents, brothers and
sisters. Accordingly, the death benefit awards were made
with the direction that "the entire amount [thereof] be paid
directly to Salome Vallez (the father) for the support of him-
self and said dependents, to be disbursed in his discretion for
such purpose."

The evidence establishes the following points with respect
to the reservoir, the scene of the fatal accident: It was eighty
by one hundred feet in area and ten feet deep, and was en-
closed by a concrete wall rising about twelve to eighteen
inches above the surrounding land. The outside wall was
perpendicular; the interior was vertical for about twelve
inches, then a ledge, which was covered with mud and debris,
protruded horizontally about a foot, and then the concrete
sloped at an approximate angle of 45 degrees. A square out-

ward jog in this wall, forming a cement box on the same level with the wall, marked the reservoir's outlet. The reservoir was "shallow around the edge and then [went] off suddenly into deep water."

To one side of the reservoir a camp was maintained for the ranch workers. It was stipulated that the camp accommodations were furnished by the employer to the employees free as an incident of their employment. While the Vallez family did not live at the camp but occupied a house some few miles distant, the Vallez boys, like the other grape pickers on the ranch, regularly used the reservoir for washing after work. Margaret Vallez testified that one of the employer's foremen lived at the camp and was often present when the reservoir facilities were being used for washing. She also testified that the reservoir was "sort of a meeting place"; "we meet there at 7 o'clock, we all get in the truck and then we start to work, we meet there every morning, then the truck leaves us there in the afternoon at 5 o'clock." The reservoir was immediately adjacent to what was called the "sand road" and "anybody . . . driving along the road could stop and wash if they wanted to." There was no fence around the reservoir and no signs of warning as to its use. Many of the employees also went swimming in the reservoir, and a diving board was located there.

It is the theory of petitioner that the boys' use of the reservoir was wholly for their personal benefit and had nothing to do with their employment as grape pickers; that their drowning cannot be traced to any risk or condition reasonably incident to that employment; and that therefore the commission exceeded its jurisdiction in making the awards. On the other hand, it is the commission's position that the boys' procedure was reasonably contemplated by their employment as grape pickers; that in the handling of the fresh fruit in the field they would normally become "grimy and dirty" and would need to avail themselves of the washing facilities provided by their employer at the site where their day's work began and ended; and that within this concept the awards are not open to challenge.

In considering the problem of the compensable nature of the deaths in question, it must be remembered that the reviewing court is not to determine the weight to be given the evidence (*Dearborn* v. *Industrial Acc. Co.*, 187 Cal. 591, 594 [203 P. 112]; *Newton* v. *Industrial Acc. Com.*, 204 Cal. 185,.

189 [267 P. 542, 60 A.L.R. 1279]) or which of two opposing inferences should be drawn therefrom. (*Western Pacific R. R. Co.* v. *Industrial Acc. Com.*, 193 Cal. 413, 417 [224 P. 754]; *Hartford A. & I. Co.* v. *Ind. Acc. Com.*, 202 Cal. 688, 693 [262 P. 309, 58 A.L.R. 1392]; *Schaller* v. *Industrial Acc. Com.*, 11 Cal.2d 46, 51 [77 P.2d 836].) A review of the record in the light of these principles of law sustains the commission's findings and awards.

 The mere fact that an employee is performing a personal act when injured does not *per se* bring him without the purview of the compensation law. The test is stated in *Employers' etc. Corp.* v. *Industrial Acc. Com.*, 37 Cal.App.2d 567, 573 [99 P.2d 1089]: "The true rule to be derived from the cases is that the injury is compensable if received while the employee is doing those reasonable things which his contract of employment expressly or impliedly authorizes him to do." Application of this concept is found in the so-called "bunkhouse rule," to the effect that where the contract of hire contemplates that the employee shall live on the employer's premises, any injury received while he is making a reasonable use of such premises is considered an incident of the employment and compensable, even though received during the employee's leisure time. (Campbell, Workmen's Compensation, vol. I, § 196, p. 188; 27 Cal.Jur. § 90, p. 392; *Larson* v. *Industrial Acc. Com.*, 193 Cal. 406 [224 P. 744]; *State Compensation Ins. Fund* v. *Industrial Acc. Com.*, 194 Cal. 28 [227 P. 168].) Analogous considerations demonstrate that the death of the two Vallez boys on their employer's premises occurred in the course of, and arose out of, their employment.

 Aside from the direct testimony that "a lot of dirt would be accumulated in picking grapes," it is a matter of common knowledge that such employment causes the field workers to become soiled. It was therefore but natural that the employer should furnish some washing facilities for his employees. Upon this premise it was a reasonable inference that the employment here contemplated the employees' use of the reservoir for cleansing purposes as an incident of the employment. Had the two Vallez boys, after leaving the field, gone immediately to the reservoir to wash while on their way to the office to collect their pay, there would be little question but that injuries received in the course of such procedure would be considered incidental to the employment and

compensable. As was aptly said on this point in *Employers'
etc. Corp.* v. *Industrial Acc. Com., supra,* 37 Cal.App.2d 567, at
pages 573-574: "If the particular act. is reasonably contem-
plated by the employment, injuries received while perform-
ing it arise out of the employment, and are compensable. In
determining whether a particular act is reasonably contem-
plated by the employment the nature of the act, the nature
of the employment, the custom and usage of a particular em-
ployment, the terms of the contract of employment, and per-
haps other factors should be considered. Any reasonable
doubt as to whether the act is contemplated by the employ-
ment, in view of this state's policy of liberal construction
in favor of the employee, should be resolved in favor of the
employee."

The Vallez boys' incidental deviation to their home did not
interrupt the continuity of their employment during the trip
and upon their subsequent return to their employer's prem-
ises and their use of the reservoir. The trip, as the evidence
indisputably established, was for the purpose of obtaining their
work cards in order to settle their accounts with their em-
ployer and, as such, was an act to the mutual advantage of
the parties. "The duty to pay and the right to receive the
compensation were integral parts of the contract of employ-
ment." (*State Compensation Ins. Fund* v. *Industrial Acc.
Com., supra,* 194 Cal. 28, at p. 34.) The industrial nature of
the Vallez boys' trip is significant only in that it brings this
phase of the case within the rule of *Western Pacific R. R. Co.*
v. *Industrial Acc. Com., supra,* 193 Cal. 413 [224 P. 754],
where a messenger on a rainy night went to his home to ob-
tain a slicker to use in the performance of his duty. In com-
bining such personal act with the business of his employer
as the employment would reasonably contemplate, the em-
ployee was held to be acting within the course of his employ-
ment. But aside from showing that the scope of their employ-
ment would have encompassed the Vallez boys throughout the
period of their travel and that an injury sustained during
such period would have been compensable, their short trip
home is not a material fact in view of their safe return to
the employer's premises en route to the office to collect their
pay. Upon the record it would appear reasonable that the
Vallez boys should stop at the reservoir, on their direct road
of travel to the office, in order to wash. Margaret Vallez tes-

tified that the boys "did not clean up [for lunch], they just came home and got the cards and went right back"; and Chano testified that they all washed at the reservoir before going to get their pay check because "we were dirty."

While the mere fact of employment and permissive use of the premises incidental thereto does not give rise to a blanket protection under the compensation law (Campbell, Workmen's Compensation, vol. I, § 205, p. 197), a reasonable use of the facilities provided for the convenience of the employees, upon analogy to the "bunkhouse rule" above mentioned, would comprehend the boys' stop at the reservoir to wash and remove the dirt accumulated from their Saturday morning's work before proceeding to their employer's office. The employer here had placed no restrictions as to hours for the use of the reservoir by the employees for washing purposes; the Vallez boys' procedure was in accordance with the prevailing practice at the camp site; and the risk attendant upon the doing of such act was therefore an incident of the employment. The fact that the reservoir was not maintained *primarily* as a washing convenience for the employees is immaterial, for its permitted ancillary use by the employees for such purpose establishes the compensable character of an injury caused thereby. (*Associated Indem. Corp.* v. *Industrial Acc. Com.*, 18 Cal.2d 40 [112 P.2d 615].) That the reservoir was likewise available for use by members of the public does not detract from the boys' right to resort to such washing accommodations by reason of their *distinct status* as employees and as an incident of their employment (*Smith* v. *Industrial Acc. Com.*, 18 Cal.2d 843 [118 P.2d 6]; *City and County of San Francisco* v. *Industrial Acc. Com.*, 61 Cal.App.2d 248 [142 P.2d 760].)

Wholly distinguishable here upon factual considerations are the cases cited by petitioner to the effect that employees sustaining injury while engaged in the performance of personal acts unrelated to the express or implied incidents of the employment do not come within the protection of the compensation law. (*Graf* v. *Montecito County Water Dist.*, 1 Cal.2d 222 [34 P.2d 138], injury occurred on the company train in the course of claimants' "excursion of pleasure wholly aside from their duties as employees"; *Fireman's Fund Indemnity Corp.* v. *Industrial Acc. Com.*, 123 Cal.App. 142 [11 P.2d 1114], injury occurred *off the employer's premises* and

claimant had previously terminated his employment; *Langendorf United Bakeries, Inc.* v. *Industrial Acc. Com.*, 6 Cal.App. 2d 46 [43 P.2d 1106], injury occurred while employee was repairing his own car on the employer's premises, but on the day in question his *employment required him to be elsewhere; Pacific Indemnity Co.* v. *Industrial Acc. Com.*, 27 Cal.App.2d 499 [81 P.2d 572], injury occurred while employee solely ''for her own personal benefit'' was *attending union meeting* on the employer's premises.)

Whether a given accident is so related or incident to the work in which the employee is engaged depends upon its own particular circumstances. No exact formula can be laid down which will automatically solve every case. (*Larson* v. *Industrial Acc. Com.*, 193 Cal. 406 [224 P. 744] ; *Enterprise Foundry Co.* v. *Industrial Acc. Com.*, 206 Cal. 562 [275 P. 432].) The question is, of course, primarily one for the commission to determine. (*Pacific Employers Ins. Co.* v. *Industrial Acc. Com.*, 19 Cal.2d 622 [122 P.2d 570, 141 A.L.R. 798].) Petitioner's reference to testimony in the record to establish that the Vallez boys were *wading* rather than ''washing their hands, face and feet'' in the reservoir is of no force here, for such observation merely demonstrates a conflict in the evidence which was for the commission to resolve. Moreover, it might be said in this connection that the description and photographs of the reservoir, showing the precipitous drop of the walls from the narrow muddy ledge as above recited, negative the likelihood that the boys could have engaged in any wading activity. While Margaret Vallez testified that the employees washed at the reservoir outlet, it does not appear from the evidence that that was the only part of the reservoir so used, that it was less hazardous for such purpose, or what section the Vallez boys had chosen for their ablutions on the day in question. In such condition of the record the inference may reasonably be drawn that washing at the reservoir was generally unrestricted, that its use by the Vallez boys was consonant with custom and practice in connection with the performance of their field duties as grape pickers, that an injury occurring in the course of such procedure was a risk incident of the employment, and accordingly the death of Tomas Vallez as above recited is compensable. (*Employers etc. Corp.* v. *Industrial Acc. Com., supra*, 37 Cal.App.2d 567.)

The next matter to be considered is the causal connection between the employment and the death of Adolfo Vallez.

He had finished his ablutions and was standing by the automobile near the reservoir when he heard his brother and co-employee, Tomas, cry for help. In the attempted rescue, Adolfo himself was drowned. These circumstances establish the industrial nature of his death and its compensable character. (*United States Fidelity etc. Co.* v. *Industrial Acc. Com.*, 174 Cal. 616 [163 P. 1013]; *Ocean Acc. & Guarantee Corp.* v. *Industrial Acc. Com.*, 180 Cal. 389 [182 P. 35]; *County of Los Angeles* v. *Industrial Acc. Com.*, 89 Cal.App. 736 [265 P. 362].) The fact that in the cited cases the injured or deceased employee was in the active discharge of his duties at the time of the accident in question is of no material importance, for here the Vallez boys were on their employer's premises in the performance of an act contemplated by their employment. In either situation the same legal principles would apply in support of the commission's compensation award. (*Ocean Acc. & Guarantee Corp.* v. *Industrial Acc. Com.*, *supra*, at p. 393.)

The only other point requiring consideration is petitioner's challenge of the respective dependency awards in these cases. In the course of the hearing before the commission, the referee expressed his understanding of the agreement of the parties as follows: "It is stipulated that *in the event that dependency be found*, and that the claimants are found entitled to benefits under the [compensation] act, that the weekly contribution from each of the deceased shall be $5.00 a week. . . ." Claimants' attorney then added: "As I understand, when we say $5.00 a week, it is understood whatever other moneys they earned, they used for themselves . . . the money they used for themselves, we have deducted." The employer's attorney agreed to this statement and said: "So stipulated." With regard to the point of inquiry as to the financial upkeep of the family, Salome Vallez, father of the two deceased boys and trustee for the remaining six minor children, testified that he "would take the money [earned by Tomas and Adolfo] and use it for the family for what was needed for the family." In view of this direct testimony establishing the practice of the father to pool the earnings of the working members of the family and use them as a unit, the death benefit awards to him as trustee, for the use of the "partial dependents," find ample support in the record and will not be disturbed. (Lab. Code, § 4704; 27 Cal.Jur. § 193, p. 540.) While

the commission did not make a finding as to the earnings of the two deceased boys, that was unnecessary by reason of the scope of the stipulation covering the matter of their contribution to the family pool and constituting the basis for the finding that each ''employee left surviving him, partially dependent,'' his parents, brothers and sisters, ''the annual amount devoted to whose support was $260.00.'' (*Great Western Power Co.* v. *Industrial Acc. Co.*, 196 Cal. 593 [238 P. 662].)

In connection with this stipulation petitioner raises the point that throughout the proceedings before the commission prior to the time of the issuance of the findings and awards, the employer had a mistaken understanding as to the amount of the earnings of the two Vallez boys, and therefore the agreement as to the amount of their contribution to the family unit was based on a false premise. Petitioner assigns as the reason for the mistake a clerical error on the part of the employer's timekeeper. This matter was unavailingly presented to the commission in a petition for rehearing, and petitioner here argues that the ''newly discovered evidence is material in that it bears on the issue of whether or not the surviving members of the deceased employees' family were dependent upon them.'' Without elaborating the point of contention, suffice it to say that the commission, in its denial of a rehearing, acted within the exercise of its discretion, for the record does not show why the so-called new evidence ''could not, with reasonable diligence, have [been] discovered and produced at the hearing.'' (Lab. Code, § 5903.)

The awards are, and each of them is, affirmed.

Gibson, C. J., Shenk, J., Edmonds, J., Carter J., Traynor, J., and Schauer, J., concurred.