[L. A. No. 19492. In Bank. Mar. 28, 1946.]

TRUCK INSURANCE EXCHANGE (an Inter-insurance Exchange), Petitioner, v. INDUSTRIAL ACCIDENT COMMISSION, MRS. ESTELL DOLLARHIDE et al., Respondents.

Syril S. Tipton for Petitioner.

Everett A. Corten and R. C. McKellips for Respondents.

SCHAUER, J. — Petitioner, the insurance carrier for Elmore W. Peterson, seeks review and annulment of a death benefit award in favor of the dependent widow and minor children of James D. Dollarhide, employee of Peterson. Dollarhide was killed when a truck collided with his automobile as he drove along the public highway from a ranch of Peterson, where Dollarhide worked, toward another ranch owned by Peterson, where the Dollarhides lived. Petitioner contends that the fatal injury was not sustained in the course of and did not arise out of the employment. We have concluded that the award must be affirmed.

Dollarhide was employed as a ranch hand. His hours of work were from 7:30 a. m. to 6 p. m. He worked at the ranch of Peterson known as the "home place." With his wife and three minor children he lived in a house furnished by Peterson, under the contract of employment, as part of the employee's compensation. Such house was on the ranch of Peterson known as the "Traver Ranch" and was about two and

one-half miles from the "home place." In addition to the two ranches above mentioned, Peterson owned two other ranches which were situated, respectively, about four and eight miles from the "home place."

After his day's work on November 23, 1943, the employe drove in his own car toward the "Traver Ranch" by a route which, according to Peterson, was "the most direct way." At an intersection a truck collided with his car and he was fatally injured. The intersection, Peterson testified, "was a dangerous crossing and many people got killed there."

Dollarhide entered Peterson's employ two weeks before his death. As to the terms of the contract of employment Peterson testified:

"Q. Was there any discussion [when Dollarhide was hired] what you would pay him? A. I was paying $165 a month then and house. . . .

"Q. Was he to work on all the ranches. . . .? A. Nothing was said about that; that was just the idea. . . .

"Q. Up to the time of the accident had he worked any on the ranch [on] which he was leaving [living]? A. None at all.

"Q. When you employed him did you contemplate that he would be working on that ranch? A. Yes, that is the way I hire everybody. . . .

"Q. The only way you can get a man to work for you is to pay them and give them a house too? A. Yes. . . .

"Q. You don't require him to live in this house? A. No, but I usually have a house for them to live in.

"Q. You figured that was part of the wages? A. I figured that was but they don't have to.

"Q. You prefer they live in the house which you furnish? A. Yes. . . .

"Q. Was he to watch out to see that petty-thieves did not get away? A. No, there was nothing that anyone could get away with, but I think it is safer to have the house occupied."

Mrs. Dollarhide testified that her uncle suggested to her and her husband that the latter inquire of Peterson as to employment and "he [the uncle] mentioned the house; . . . he said, 'go and see them; see what kind of houses they are.'" She further testified that Dollarhide, after he had called on Peterson, told her, "I got my job, I am going to go to work tomorrow. . . . Peterson showed me the little house. . . . I've got the little house, so we can move this evening."

■ An injury, to be compensable, must arise out of the employment, must be "proximately caused by the employment," and the employe at the time of injury must be "performing service growing out of and incidental to his employment and . . . acting within the course of his employment." (Lab. Code. § 3600, subds. (b), (c).) In considering whether an injury arose "out of" and was "proximately caused by the employment" it has been repeatedly recognized and emphasized that questions of workmen's compensation are not controlled by common law rules as to "proximate cause" in tort cases and that reasonable doubts as to whether an injury is compensable are to be resolved in favor of the employe. (See, e. g., *Pacific Emp. Ins. Co.* v. *Industrial Acc. Com.* (1945), 26 Cal.2d 286 [158 P.2d 9, 159 A.L.R. 313], and the cases there collected.)

■ A causal connection between employment and an injury by accident on a public road can properly be found where the employe by reason of and in connection with his employment is peculiarly subject to the danger to which the general public is also exposed. (*Freire* v. *Matson Navigation Co.* (1941), 19 Cal.2d 8, 12 [118 P.2d 809].) The employe here was peculiarly exposed to the risk of the dangerous intersection by reason of its location with respect to the ranches between which he was required to travel if he accepted, as he did, the total compensation attached to his employment.

■ Where the contract of employment contemplates that the employe shall live on the employer's premises an injury sustained while the employe is making a reasonable use of such premises, although not during working hours, can properly be found to be within the course of employment. (*Associated Oil Co.* v. *Industrial Acc. Com.* (1923), 191 Cal. 557, 559 [217 P. 744]; *Larson* v. *Industrial Acc. Com.* (1924), 193 Cal. 406, 410 [224 P. 744]; *State Comp. Ins. Fund* v. *Industrial Acc. Com.* (1924), 194 Cal. 28, 32 [227 P. 168]; *Union Oil Co.* v. *Industrial Acc. Com.* (1931), 211 Cal. 398, 403 [295 P. 513]; *Employers' etc. Corp.* v. *Industrial Acc. Com.* (1940), 37 Cal.App.2d 567, 569 [99 P.2d 1089].) The evidence clearly shows that Dollarhide's contract of employment contemplated that he live on the "Traver Ranch."

Petitioner, however, relies on the theory suggested in the Associated Oil Company (1923) and Larson (March, 1924) cases, *supra*, that the above stated proposition (the so-called

"bunkhouse rule") applies only where the employee is *compelled* to live on the premises, is not free to come and go as he pleases, and his time is not his own. But in *State Comp. Ins. Fund* v. *Industrial Acc. Com.* (June, 1924), *supra,* it was held (at p. 32 of 194 Cal.), "[The employe], it is true, had a choice, when she applied for employment, of making a contract by which she would be paid fifty dollars a month and furnish her own room, or a contract by which she would receive forty dollars a month and accept a room in the hotel. . . . [p. 33] When she had made her choice and signed the contract of employment . . . she was bound during that month, at least, to accept a room in the hotel in lieu of ten dollars additional wages. . . . [She] was to be furnished all of her meals at the hotel as a part of her compensation for her labor. It was a part of the . . . contract creating her status as an employee that she should live at the hotel and receive her meals there. . . . She was in the course of her employment when she was collecting this remuneration, just as much as when she was performing the labor that earned the remuneration. . . . [p. 34, quoting from *Hackley etc. Co.* v. *Industrial Acc. Com.,* 165 Wis. 586 (162 N.W. 921)] 'If we turn to the text-books and decided cases on this subject, we find that they sustain the view that an employee going in the usual manner [the trip in this case was by train] for his pay to a place designated by the employer is performing a service within his employment.' . . . [p. 36] [The employe] was in course of her employment and performing services growing out of and incidental to such employment when she was leaving her place of employment (her residence, also, by reason of her contract of employment, and furnished to her as part compensation for her labor under such contract) by the exit designated by her employer, to enjoy her 'day off'—an intermission in her labor contemplated by said contract of employment," and fell on the public sidewalk because of an unsafe condition created by fellow employes. It is the theory of the quoted and subsequent cases that the living quarters "are part of the employee's compensation which is being earned [or collected] at all times while the employee is on the premises, and that, therefore, the earning and collection of such compensation is as much a part of the employment as is the performance of service, and is reasonably incidental thereto." (*Employers' etc. Corp.* v. *Industrial Acc. Com.* (1940), *supra,* 37 Cal.App.2d 567, 569.)

 So here Dollarhide could have agreed to work for wages of $165 a month only. But Peterson testified, "the only way you can get anyone is to furnish a house." And the offer of employment which Peterson preferred that Dollarhide accept, and which Dollarhide did accept, was for compensation of "$165 a month, and a house." Though Dollarhide could have moved from the ranch at will he had not done so; his agreement to occupy the ranch remained a term of the employment contract, and regardless of whether he was performing a service to his employer by residing in the house he was entitled to collect his compensation for services rendered on the other ranch and such compensation included the occupancy of the house on the "Traver Ranch." (*Cf. California Cas. Indem. Exch.* v. *Industrial Acc. Com.* (1942), 21 Cal.2d 461, 464 [132 P.2d 815].)

From the authorities which have been discussed it appears that if Dollarhide had reached the "Traver Ranch" it could have been found that he was within the course of his employment. If he had been upon the necessary means of access to the "home place," whether or not such means of access was controlled by the employer, during the reasonable interval of time allowed for his departure from the place where he rendered service, he could have been within the course of his employment. (*Freire* v. *Matson Navigation Co.* (1941), *supra*, 19 Cal.2d 8, 12, 13.) If he had been traveling directly from one place of rendering service to another (*Department of Pub. Wks.* v. *Industrial Acc. Com.* (1932), 128 Cal.App. 128 [16 P.2d 777]; *Gagnebin* v. *Industrial Acc. Com.* (1934), 140 Cal.App. 80, 84 [34 P.2d 1052]; *Dauphine* v. *Industrial Acc. Com.* (1943), 57 Cal.App.2d 949, 953 [135 P.2d 644]) or within a district where the duties of his employment required him to travel (*Makins* v. *Industrial Acc. Com.* (1926), 198 Cal. 698, 703 [247 P. 202, 49. A.L.R. 411]), he could have been within the course of his employment.

Although Dollarhide's factual situation does not bring him squarely within any one of the above cited California holdings it contains many controlling elements common to the cited cases. "No exact formula can be laid down which will automatically solve every case," this court said recently in holding compensable the death of employes which occurred when and because they stopped on their way to collect compensation to make reasonable, personal use, contemplated by the employment, of washing facilities of the employer's reser-

voir. (*Pacific Indem. Co.* v. *Industrial Acc. Com.* (1945), 26 Cal.2d 509, 516 [159 P.2d 625].) ▉ An employe cannot be required to forego a part of his compensation in order to relieve the employer from risk. ''The duty to pay and the right to receive the compensation were integral parts of the contract of employment,'' and ''The medium of exchange in which wages happen to be paid is a mere accidental circumstance and should not be permitted to cloud the issue.'' (*State Comp. Ins. Fund* v. *Industrial Acc. Com.* (1924), *supra*, 194 Cal. 28, 34-35; *Pacific Indem. Co.* v. *Industrial Acc. Com.* (1945), *supra*, p. 432.)

▉ Proceeding by a route and by the means of transportation contemplated by the contract of employment, at a time contemplated by the contract, having rendered service at the ''home place'' and engaging in proceeding directly to collect a portion of his compensation by occupying the ranch house as the contract provided, the employe met a risk contemplated by the employment and known to the employer and was killed. It cannot be said, as a matter of law, that the commission was without jurisdiction to find that the injury arose out of and was in the course of his employment.

For the reasons above stated the award is affirmed.

Gibson, C. J., Shenk, J., Edmonds, J., Carter, J., Traynor, J., and Spence, J., concurred.