[Civ. No. 9735.   Third Dist.   Dec. 22, 1959.]

FIDELITY AND CASUALTY COMPANY OF NEW YORK et al., Petitioners, v. INDUSTRIAL ACCIDENT COMMISSION and FAY M. DE TURBIVILLE et al., Respondents.

Hanna & Brophy for Petitioners.

Everett A. Corten, Emily B. Johnson and Percy J. Creede for Respondents.

VAN DYKE, P. J.—Petitioners herein seek review and annulment of findings and award of the respondent commission in which death benefits were awarded the widow and minor children of Edward de Turbiville, who died while employed by Morrison-Knudsen Company as a millwright at Surabaja, East Java, Indonesia. Two questions are presented: 1. Is there substantial evidence in the record to support the decision of the commission that the decedent died as the result of an industrial injury? 2. Is there substantial evidence in the record to support the decision of the commission that good cause to reopen was shown?

Decedent was employed in a construction camp in Indonesia. The contract of employment provided inter alia as follows: For the performance of services as a millwright in Indonesia, in connection with the performance by Morrison-Knudsen Company of a contract to construct a cement mill and auxiliary facilities, including a dock. Although he was a millwright, he was required to do any other work within his capacity to which he might be assigned. He was paid a monthly salary of $700, plus board, lodging and medical services. The term of employment was for such period as the employer should desire his services, with a proviso that the employee could terminate after 28 months of continuous employment. He was to work such hours and shifts as might be required by the employer. The employer could call the

employees to work at any time. They were theoretically on twenty-four hours' duty though regular hours were assigned; de Turbiville's regular shift hours were from 6:30 a. m. to 4:30 p. m. The employee was required to use the facilities in regard to board, lodging and medical services unless given a cash allowance in lieu at the employer's option. The employment contract called for transportation to and from Indonesia, but there was a provision that if de Turbiville quit, or was discharged for cause within the 28 months' period he would be cut loose at the jobsite, his pay would cease, and transportation back to the United States would not be furnished.

Although the construction of the dock was a part of the work to be done by the employer under its general construction contract, the doing of nearly all of the work had been sublet to a Dutch firm, which at the time of de Turbiville's death had completed its work. There remained to be done by he employer, however, a small amount of work. The dock construction project was described by one witness as having been 95 per cent completed. The worksite for de Turbiville was about 1¼ miles from the dock. On April 11, 1957, at about 8 p. m., de Turbiville, outside his regular hours, went to the dock with another employee for the purpose of going swimming. There was nothing in the company regulations which prevented the employees from being on the pier at that time or from using the pier for swimming and the pier had been used for that purpose. The weather at the time was hot and humid. There were probably 50 employees on the job. When he went to the dock de Turbiville had no duty to perform there and in fact had never worked on the dock. His purpose in going there was recreational. Some recreational facilities were furnished by the employer, but there was no organized program for recreational swimming. When de Turbiville and his companion arrived at the dock it was dark and his companion was trying to persuade de Turbiville to forego his intended swimming. However, de Turbiville began undressing preparatory for swimming, but before going in he apparently changed his mind and decided to yield to the suggestions of his companion that he return to his lodgings. The companion then turned toward the company car in which he had driven de Turbiville to the dock, heard a shuffling sound, looked back and saw de Turbiville falling into the water. Efforts to rescue were unavailing and de Turbiville drowned.

Before considering the procedural question, we shall consider the evidence as supporting the commission's finding that de Turbiville's death arose out of and in the course of his employment.

In cases such as this the question is whether or not there is such work connection between the job and the injury as to satisfy the formula "arising out of and in the course of employment."     This case meets the test as to "course of employment," for "When an employee is required to live on the premises, either by his contract of employment or by the nature of the employment, and is continuously on call (whether or not actually on duty), the entire period of his presence on the premises pursuant to this requirement is deemed included in the course of employment." (Larson's Workmen's Compensation Law, § 24, Title "Resident Employees"; *Union Oil Co.* v. *Industrial Acc. Com.*, 211 Cal. 398, 403 [295 P. 513]; *Truck Ins. Exch.* v. *Industrial Acc. Com.*, 27 Cal.2d 813, 816 [167 P.2d 705].)     It is a fair inference from the contract requirements and the geographical conditions of the employment that de Turbiville was required to live on the premises. He was paid a monthly salary. His compensation, in addition, included board and lodging and medical care. These facilities he agreed to use unless released at the election of the employer. His work was in a distant foreign land. He was bound to stay with the employer either on the job where he was when he met his death or on such other projects as the employer might assign him to during a period of not less than 28 months. He was certainly as much at the beck and call of his employer and as constantly under his employer's control as a domestic employee required to live in the employer's residence. In a very practical as well as legal sense the injury occurred on the employer's premises. True, that portion of the site of the construction work where he was when the injury was sustained was not the portion upon which he had performed his work nor was it that portion devoted to the boarding and lodging and care of the employees. Nevertheless, the area of the dock was under at least a partial control of the employer and this fact furnishes a fair explanation of why the employees used the dock for swimming. We think his injury arose out of and in the course of his employment. We think there would have been no question raised as to compensation if de Turbiville, within the quarters furnished him, had slipped on a cake of soap in a bathroom while performing his ablutions. We think

also that in that hot and humid climate he cannot be otherwise regarded because he sought the open sea. We hold that de Turbiville's death arose out of and in the course of his employment. (See *Union Oil Co.* v. *Industrial Acc. Com., supra; Truck Ins. Exch.* v. *Industrial Acc. Com., supra; Employer's Liability Assur. Corp.* v. *Industrial Acc. Com.,* 37 Cal.App.2d 567, 569, 572-573 [99 P.2d 1089] ; *Winter* v. *Industrial Acc. Com.,* 129 Cal.App.2d 174, 178 [276 P.2d 689].)

Turning now to the second question having to do with the procedure followed by the respondent commission we note the following: de Turbiville's dependents filed an application for benefits with the respondent commission on October 8, 1957. Following a hearing, the claim was denied February 20, 1958, and no petition for reconsideration was filed. However, in August of 1958 they filed a petition to reopen, alleging the discovery of new evidence. Objections were filed by petitioners and the matter was set for hearing, which was held September 26, 1958. On January 6, 1959, the trial referee filed his "Order Granting Applicants' Petition to Reopen and Findings and Award." The decision completely reversed the preceding one and awarded death benefits. Petitioners argue that the commission committed procedural error in reopening a case which had become final without a showing of good cause for such action. Without regard to whether or not evidence presented on the hearing of the "Petition to Reopen" could have been obtained and presented during the hearing that preceded the denial of compensation, it is clear that evidence was received at the hearing of the petition to reopen which completely changed the picture. It was shown that the pier area to which decedent had repaired to go swimming was in fact controlled by the employer; it was further shown, which certainly did not clearly appear during the prior proceedings, that decedent was on 24-hour duty. It is apparent from the record that it was these two additional factors which persuaded, and as we have held properly persuaded, respondent commission to change its decision. While there may not have been a strict compliance with procedural rules, it is clear that the final decision was made upon evidence substantially different from that which had been before the commission on the prior decision, that nothing was shown that was not presumptively known to petitioners, and that the final decision was in accord with the full record. Under such circumstances we

would not annul the award. (*Merritt-Chapman & Scott Corp.* v. *Industrial Acc. Com.*, 6 Cal.2d 314, 317 [57 P.2d 501].)

The award is affirmed.

Peek, J., and Schottky, J., concurred.