This is a petition to review an award of damages which was rendered against the Highway Division of the Department of Public Works of the State of California pursuant to the Workmen's Compensation, Insurance and Safety Act, on account of the death of a laborer which occurred as the result of an automobile casualty.
In January, 1932, Edward E. Dreyer was employed by the Department of Public Works of the State of California as a laborer to assist in clearing the highway of snow and debris in the vicinity of San Bernardino. Dreyer lived at Crestline. He was living separate and apart from the respondent Ruth Dreyer, who is his widow. She was partially *Page 129 
dependent upon him for support pursuant to an agreement between them for a settlement of property rights. The laborers were required to report for work each morning at 7 o'clock at the Etiwanda tollhouse on the mountain highway about seven miles from San Bernardino. The employer's trucks left San Bernardino for the tollhouse at 6:30 A.M. Workmen were permitted to ride in these trucks free of charge. They were not required to travel this way. Several of them drove their own cars to the tollhouse, where some of the private machines were parked, and some laborers proceeded to the location of their employment in the trucks. Others were accustomed to drive their own automobiles on from the tollhouse to the place of their employment. This was done with the knowledge and consent of the foreman. Mr. Davidson, foreman in charge of the work, testified in that regard: "Q. Some of them (the workmen) took their own cars all the way up (the highway, to the place where they were engaged in working)? A. Yes. Q. Without any objection from the foreman or instructions to the contrary? A. I never made any objection."
On the morning of January 23, 1932, Dreyer drove his own machine from Crestline to the tollhouse, where he reported for work at 7 o'clock. Roy Clark, who was an assistant foreman in charge of the highway work that day, directed Dreyer to assist him in transferring to the trucks the hand tools which were stored at the tollhouse. The workmen were engaged in clearing the highway of snow and debris at a point several miles beyond the tollhouse. It was a cold snowy morning. The workmen were permitted to ride in the trucks free of charge, from the tollhouse to the place of employment. They were not instructed or required to do so. It was optional with them, whether they rode in the trucks, or drove their own machines. Mr. Clark testified in that regard: "They (the workmen) have been driving in their own car; if a man wants to drive in their own car, why (they are authorized) to go ahead; they were not compelled to ride in the trucks."
After the tools were loaded, there was but one open truck remaining in which Dreyer and the foreman could ride. Dreyer said to Clark that it was cold and windy that morning to ride in an open truck and he was willing to drive *Page 130 
his own car on to the point where they were to clear the highway. The foreman volunteered to ride with him. He offered to buy fifty cents worth of gasoline for the trip. Dreyer, however, refused to permit this to be done. They started upgrade from the tollhouse a few minutes after 7 o'clock. The day's work had begun. Dreyer was then subject to the orders of the foreman with whom he was riding. About twenty-five minutes later, as their machine rounded a curve, the morning sun struck the windshield, and apparently blinded the driver. The machine ran over the grade, rolling into a gulch below. Dreyer was killed. Clark was seriously injured.
A claim for compensation was filed by Ruth Dreyer, the widow of the deceased. The Industrial Accident Commission found that Dreyer was injured in the course of his employment, that Ruth Dreyer was the widow of the deceased, and partially dependent upon him for support. The Commission thereupon rendered an award of damages against the Department of Public Works for the sum of $462. A petition for a writ of certiorari was then filed in this court to review the award of damages.
[1] The sole question which is involved in this proceeding is whether the deceased received the injuries from which he died while he was engaged in the course of his employment. The petitioner asserts that the award of damages is invalid because Dreyer's injuries were received while he was en route to his work and not while he was actually engaged in the course of his employment; that he was driving his own machine, in the operation of which the employer had no management or control; that the well-established rule of "going and coming from work" relieves the employer from liability.
We are satisfied from the circumstances of this case that Dreyer died from injuries received in the course of his employment. The rule which relieves an employer from liability for injuries received by an employee while he is going to or coming from work has no application to the particular facts of this case. He was employed as a laborer to assist in clearing snow and debris from the state highway at any point which might be designated by the foreman from time to time. He was employed to work eight hours a day. His day's work began at 7 o'clock in the morning. *Page 131 
He was required to report at that time at the tollhouse on the High Gear grade. The employer's tools were stored at that tollhouse. They were engaged on the morning of the accident in clearing the highway several miles beyond this point. When Dreyer reached the tollhouse, and reported for work, he was met by the foreman, who directed him to assist in loading the tools for the day. This was a part of his employment. He was then under the direction of the superintendent. While it is true that the empolyer made provision for workmen to ride to the point of actual service on trucks which were used in the highway work, this means of conveyance was not required of the workmen. Some of them drove to the place of employment in their own machines. The foreman was aware of this custom and acquiesced in the practice. On the morning of the accident the assistant foreman, who was in charge of the day's work, consented to Dreyer's offer to drive them on to the point where they were to commence clearing the highway. He actually rode with Dreyer. Since the day's work had begun, and Dreyer was then under the supervision of the foreman, he was actually subject to directions from Clark. It may not be said they were not engaged in the course of employment merely because the shoveling of snow had not actually commenced. It would be just as reasonable to assert they were not engaged in the course of employment during intervals while they were traveling, either by machine or on foot, from one point where snow or debris had accumulated to another. They were employed to clear the highway on the mountain grade above the tollhouse. That section of the highway was their field of employment. The Department of Public Works may not deny liability merely because Dreyer was going in his own machine from one point of service to another in the field of his employment. Dreyer was encouraged to do this. The employer acquiesced in this particular use of the owner's machine.
The case of Matlon v. Matlon, 92 Ind. App. 350
[175 N.E. 369], is authority for affirming the award in the present proceeding. In that case the court held that, the employer having acquiesced in the workman's use of his own automobile in going from one job to another, he was estopped from denying liability for injuries which were sustained while doing so. The court said: "Here the employers *Page 132 
ordered and acquiesced in the employees using a means of transportation from one job to another while being paid for such time. The employees, owing their employers the duty of reporting for the work at the place designated, proceeded toward that place, and while traveling a well-recognized route were injured. . . . Even granting that there had been no specific order given to use this particular means of transportation, the acquiescence of the employers has been held sufficient, since the acquiescence abrogates specific instructions. (Alberta Contracting Corp. v.Santomassimo, (1930) 107 N.J.L. 7 [150 A. 830].)"
In the Matlon case it does appear the foreman may have directly authorized the use of the workman's car, by saying, "Boys, let's get the tools and things . . . and get in the car of Joe Matlon." This does not distinguish that case from the present proceeding. The principle which governs that case also applies to this proceeding. This is a stronger case of acquiescence, for two foremen were aware of the fact that it was the custom of several workmen to ride to the place of their employment in their own cars. No objection was ever made to this practice. This acquiescence in the means of transportation is equivalent to directing it to be done. By approval of the employer it became an authorized alternative means of traveling from one point of service to another in the general field of employment. Under the circumstances of this case it would be unreasonable to say that Dreyer was not actually engaged in the course of his employment at the time of the accident which caused his death.
The award is affirmed.
Pullen, P.J., and Plummer, J., concurred. *Page 133