[Civ. No. 10585.   First Appellate District, Division One.—November 27, 1937.]

A. J. JIMESON, Petitioner, v. INDUSTRIAL ACCIDENT COMMISSION OF THE STATE OF CALIFORNIA et al., Respondents.

James A. Walker and J. P. Mandl for Petitioner.

Everett A. Corten and Elden B. Spofford for Respondents.

THE COURT.—The petitioner, A. J. Jimeson, was employed by the California Orchard Company as farm laborer on its ranch in Monterey County, and while traveling from the worksite on the ranch toward the ranch headquarters shortly before the noon hour, for lunch, he was badly injured in a traffic accident.   He suffered a fractured skull, a brain injury, and sundry bruises and abrasions; and being unable

to speak or write as the result of said injuries, his wife, in his behalf, filed with the Industrial Accident Commission an application for compensation. The State Compensation Insurance Fund was the insurance carrier, and the commission sustained its contention that Jimeson was barred by the so-called going and coming rule from recovering any of the benefits afforded by the compensation act. Thereupon this proceeding was instituted in Jimeson's behalf for the purpose of annulling the decision of the commission.

The ranch is situate seven miles north of King City. It contains many hundreds of acres, and a stretch of it extends to and borders on the westerly side of the state highway for a distance of about two-thirds of a mile. Much of the ranch is devoted to the growing of fruit, the orchards being located on different parts of the ranch some distance from each other. The ranch headquarters are located at the southeasterly corner of the ranch, near the state highway, and consist of an administration building, barns, garages, etc.; also bunk houses and a number of cottages where the employees live. The employees were required to report at headquarters each morning at 7 o'clock for assignment to work; and as part of the employment agreement the company transported the men in trucks from headquarters to the worksite, brought them back to headquarters for lunch, returned them to the worksite after lunch, and brought them in to headquarters at the close of the day's work. However, the men were not obliged to ride in the trucks. If they chose, they were permitted by the company to drive their own automobiles; but no allowances were made therefor, the only difference being that if they used their own conveyances and were late for work their pay was docked. Pursuant to this arrangement some of the men, including Jimeson, invariably used their own automobiles. The reason therefor was that the trucks were open and not provided with seats, and during the summer months the roads throughout the ranch over which they traveled were dusty, and during the winter season it was too cold to ride in the open trucks.

Under the terms of employment the men were hired and paid and the company was entitled to their services up to 12 o'clock—that is, for five hours morning work. In other words, they were required to report at 7 o'clock each morning at headquarters for assignment to work, and thereafter

were subject to the direction of the company until noon. However, the common practice was to call for the men in the fields or orchards where they were working before 12 o'clock so that they would arrive at headquarters for lunch at noon.

On the morning of the accident and before Jimeson left the cottage in which he lived on the ranch premises near headquarters, he stated to his wife and his father-in-law that the engine of his automobile was not working satisfactorily, and that he intended to leave the automobile at the headquarters garage to be fixed, and ride the truck to work. But upon arriving at headquarters he found that only one truck was being operated to convey the men to work, and that it had already started for the worksite. Consequently, either he had to wait at headquarters for the return of the truck from the worksite or use his own automobile; and he decided to drive to work in his own car. The assignment of work that day was to prune an orchard located near the northerly boundary of the ranch, approximately two and three-quarters miles from ranch headquarters; and in order to reach the orchard he took the usual route, westerly along a road referred to in the proceedings as the dirt road, for a distance of about a mile and a quarter, to the intersection of another road called the paved road, which ran in a northerly and southerly direction, and then followed along the paved road for a distance of a mile and a half, both roads being entirely on the ranch property. The company's truck called at the worksite before noon to convey the men back to headquarters for lunch, and it was followed back by three employees' machines, the second behind the truck being Jimeson's; and just before Jimeson reached the headquarters premises a collision occurred between his machine and another truck belonging to the company, which approached in the opposite direction and was driven by a company foreman. Immediately following the accident Jimeson was taken to a hospital in King City, seven miles distant, and the undisputed hospital records proved that he arrived there at 12 o'clock.

There is no serious dispute as to the existence of the foregoing facts, and in our opinion they fail as a matter of law to support the commission's finding that Jimeson's injuries did not occur in the course and arise out of his employment. It is evident that if he had been injured while returning for lunch in the company's truck there would be little or no ques-

tion that he would have been entitled to compensation; and under the law as declared in *Department of Public Works* v. *Industrial Acc. Com.*, 128 Cal. App. 128 [16 Pac. (2d) 777], the fact that he was traveling in his own machine at the time he was injured does not operate to deprive him of the right to compensation.

Evidently the commission's decision is based upon the theory that the moment Jimeson actually ceased work in the orchard he was on his own time; but the case of *Makins* v. *Industrial Acc. Com.*, 198 Cal. 698 [247 Pac. 202, 49 A. L. R. 411], is sufficient authority for holding to the contrary. There a distributor of newspapers over a route in a certain district of a city prescribed by his employer was injured in a traffic accident while on his way back to the starting point, after making his last delivery, and it was held that his injuries were received in the course of and arose out of his employment. If the accident here had happened after Jimeson had passed headquarters (the point at which the truck delivered the men) and before he reached his place of abode on the premises, it is quite probable the going and coming rule would apply. But such is not the case. It happened, as stated, before Jimeson reached headquarters, and within the period of time over which his employer had control of his services.

In our opinion the case cannot be successfully differentiated in principle nor in its essential facts from *Department of Public Works* v. *Industrial Acc. Com., supra.* There a number of highway laborers, including one Dreyer, were employed by the department of public works to clear a mountain highway of snow and debris. The men were required to report at a toll house at 7 o'clock in the morning, and from there they were transported in the department's trucks to the worksite. But, as here, the men were permitted, if they chose, to drive to the worksite in their own automobile. On the morning in question Dreyer drove his own machine to the toll house, but on arriving there it was cold and windy, and consequently he decided to continue on to the worksite in his own machine, and the foreman volunteered to ride with him. After proceeding up the grade for some distance his automobile, in rounding a curve, ran off the grade and rolled into the gulch below, killing Dreyer and injuring the foreman. Dreyer's widow applied for compensation, and it was

there sought, as here, to defeat the claim upon the ground that the injuries were not received while the employee was actually engaged in the course of his employment, it being contended in this regard that he was en route to work; that he was driving his own machine, in the operation of which his employer had no management or control; and that consequently the going and coming rule relieved the employer from liability. But the court held that under the circumstances said rule did not apply; that since the employee was using his own machine with the consent and knowledge of his employer, and the accident happened during the period of time within which the employee was subject to the employer's control, the widow was entitled to the benefits granted by the compensation act. The only variance between the facts of that case and the present one is that there the employee was going to the worksite, whereas here the employee was coming from the worksite; and obviously such distinction is quite immaterial so far as the question of the application of the going and coming rule is concerned, and does not operate to bring the present situation within the scope of said rule.

A number of years ago said company filed with the county recorder a subdivision map of the ranch, on which certain roads laid out thereon, including the so-called dirt road, were dedicated to the public. However, none of the property was sold, and it was stipulated that ever since the filing of the map the dirt road has been used almost exclusively by the company and its employees for company purposes. In view of the above facts, some mention is made by the insurance carrier that the accident happened on a public county road. But conceding that such was the legal status of the dirt road, the fact that Jimeson was traveling thereon at the time of the accident did not serve to defeat his claim to compensation. (*State Compensation Ins. Fund* v. *Industrial Acc. Com.,* 194 Cal. 28 [227 Pac. 168]; *Makins* v. *Industrial Acc. Com., supra; Judson Mfg. Co.* v. *Industrial Acc. Com.,* 181 Cal. 300 [184 Pac. 1].) Admittedly the dirt road was entirely on the company's ranch, and was the route adopted by the company over which it transported its men to and from the worksite; and as said in the Makins case, *supra,* the rule is well settled that an employee, in going to work, comes under the protection of the act when he enters the employer's premises or upon the means provided for access thereto, though

the premises and such means of access are not wholly under the employer's control or management; and the same rule applies when the employee is leaving such working premises provided he does not unnecessarily loiter thereon.

We have examined the cases cited by respondents in support of the commission's decision, but find nothing therein which in our opinion is contrary to the views herein expressed, nor which could have the effect of altering the conclusion we have reached. Each case must, of course, be adjudged by the facts which are peculiarly its own (*Makins* v. *Industrial Acc. Com., supra*); and after considering all the admitted facts of the present case in the light of the decisions hereinabove cited, we are convinced that there is no justification for the application of the going and coming rule.

Therefore the decision of the commission is annulled, and the cause is remanded for further proceedings in accordance with the views herein expressed.