[Civ. No. 17344.   Second Dist., Div. Three.   Jan. 26, 1950.]

GAYTAN ENGINEERING COMPANY (a Corporation) et al., Petitioners, v. INDUSTRIAL ACCIDENT COMMISSION, ESTHER RUSH et al., Respondents.

Kearney, McCartney, Scott & Clopton for Petitioners.

T. Groezinger for Respondents.

SHINN, P. J.—Proceeding to review an award of a death benefit and burial expenses to the widow and minor children of S. W. Rush, whose death occurred on July 22, 1948, as a result of an automobile accident. The question for decision is whether the commission correctly decided that deceased sustained injury arising out of and occurring in the course of his employment which proximately resulted in his death.

Mr. Rush was employed by Gaytan Engineering Company as a painter, and was sent from Los Angeles to the Army Air Base at Muroc, California. He provided his own transportation to the job by means of his pick-up truck. While he was employed on the job he was compensated for the use of his truck in the employer's business around the air base. His services at the airfield were discontinued the evening of July 21, 1948, under circumstances to be related. At about 9:30 p. m., he drove his truck north from the air base to U. S. Highway 466, proceeded west on that highway, and shortly thereafter suffered the fatal accident. Gaytan Engineering

Company also had a painting contract with the Navy at Inyokern. The Muroc job was in charge of a foreman, Kenrey, and the Inyokern job in charge of a foreman, Velasco, both employees of the Gaytan Company. The disputed factual question was whether deceased was returning home to Los Angeles after the termination of his employment, or was on his way to Inyokern under the direction of Kenrey to continue his employment there.

■ We should read into the general findings of the commission specific findings upon all factual issues that tend to support the award and which have substantial support in the evidence. It will therefore be deemed that the commission found that Rush was on his way to Inyokern pursuant to instructions of his employer. There was no direct evidence that he was on his way to Inyokern at the time he met with his accident. He had some 80 or 90 miles to travel and was on the route of the main highways between Muroc and Inyokern although he could have reached Los Angeles by turning south instead of north at Mojave. There were considerably shorter routes he could have followed in going directly from Muroc to Los Angeles.

The foreman Kenrey testified that in the afternoon of July 21st he had been directed by Mr. Gaytan, president of the employing corporation, to transfer 10 men from Muroc to the Inyokern job and that this practice had been followed on previous occasions. He also testified that on July 21st additional painters were needed at Inyokern and could be spared from the Muroc job; that on the afternoon of the 21st he directed Rush and several other painters to go to Inyokern and that Rush agreed to go and also inquired as to whether he would be paid for the use of his truck at Inyokern. There was other testimony that Kenrey directed Rush to go to Inyokern and also testimony that when he left Muroc at about 9:30 p. m., he stated he was going to Inyokern. Petitioner contends that all probative force of Kenrey's testimony was destroyed by contradictory testimony and other impeaching evidence. Although petitioner's argument is not without force it is unnecessary to discuss it. The testimony to which we have referred was sufficient as proof of the facts to which Kenrey testified; the question of his credibility is not one of law. We must therefore take as a factual basis for discussion of other questions that Rush at the time of his accident was on his way to Inyokern under an agreement with his employer that he would go there to work on the Navy job.

█ At the time Rush was employed it was agreed that he would be paid wages for the time spent in going from Los Angeles to the Muroc job, and in returning to his home after his services were ended. It was also an established custom to pay employees for time spent in going from Muroc to the Inyokern job when they were transferred. It is clear, in any event, that the transfers were made in the interests and at the expense of the company and not at the expense of the employees. In the case of Mr. Rush there was the added circumstance that the company might have use for his truck on the Inyokern job as it had been used on the Muroc job.

We entertain no doubt that in the circumstances related the commission was justified in finding that the fatal injuries occurred in the course of and arose out of the employment. The evidence, in our opinion, justifies the conclusion that there was no break in the continuity of Rush's services. Muroc and Inyokern are small desert communities far removed from any sizable labor market. The transfer of men from one job to the other was of a special benefit to the employer. In going to Inyokern Rush had not departed from the service of his employer nor engaged upon an errand personal to himself. It was, of course, to his advantage to continue his employment, but only as it is to the advantage of any workman to earn his wages. He was serving his employer as long as he was obeying special directions given by the latter, especially since the directions were such as were reasonably to be anticipated, within the scope of the employment.

█ While the precise question before us has not been decided directly in California, the cases recognize that transfer from one job to another may be made without a termination of the employee's service. (*Truck Ins. Exchange* v. *Industrial Acc. Com.*, 27 Cal.2d 813, 819 [167 P.2d 705]; *Jimeson* v. *Industrial Acc. Com.*, 23 Cal.App.2d 634 [73 P.2d 1238]; *Gagnebin* v. *Industrial Acc. Com.*, 140 Cal.App. 80 [34 P.2d 1052]; *Dept. of Pub. Wks.* v. *Industrial Acc. Com.*, 128 Cal. App. 128 [16 P.2d 777].) █ It has been settled, however, in other jurisdictions, that under such circumstances the services will be deemed to have been continuous if the evidence shows that the parties acted with that understanding. (*Hardie Sales Co.* v. *Astrachan*, 239 Ala. 558 [196 So. 135]; *Industrial Commission* v. *Aetna Life Insurance Co.*, 64 Colo. 480 [174 P. 589, 3 A.L.R. 1336]; *Wineland* v. *Taylor*, 59 Idaho 401 [83 P.2d 988]; *McKinney* v. *Dorlac*, 48 N.M. 149 [146 P.2d 867];

*Raimone* v. *Fligelman,* 245 App.Div. 780 [280 N.Y.S. 928]; *Texas Employers' Ins. Ass'n* v. *Herron,* (Tex.Civ.App.) 29 S.W.2d 524; *Burchfield* v. *Department of Labor & Industries,* 165 Wash. 106 [4 P.2d 858]; see, also, Campbell on Workmen's Compensation, vol. 1, § 181, p. 170.) ▆ In the present case the payment of compensation to the employee during the time spent in transferring from Muroc to Inyokern was a circumstance tending in some degree to show there was an understanding that he would remain in the service of his employer while making that journey. There was ample evidence to prove that Mr. Rush had not discontinued his services for his employer at the time of the accident.

In view of the conclusions we have stated it is immaterial that Mr. Rush was using his own means of transportation, as he was expected to do. He is not to be considered as an employee who was going to work or returning from it, but as one who, having engaged in the work for which he was employed, was carrying out special instructions of his employer in the performance of the agreed services. It is also immaterial that he was making the trip after usual working hours. Nighttime travel across the desert in the month of July is not unusual, and Mr. Rush had received no instructions as to when he should leave Muroc.

The award is affirmed.

Wood, J., and Vallée, J., concurred.