[Civ. No. 10967.   Third Dist.   Dec. 28, 1964.]

LIBERTY MUTUAL INSURANCE COMPANY, Petitioner, v. INDUSTRIAL ACCIDENT COMMISSION and WALTER F. WALDEN, Respondents.

Hanna & Brophy and F. Clinton Murphy for Petitioner.

Everett A. Corten, Charles Decker and Leep & Saunders for Respondents.

VAN DYKE, J.*—Petitioner herein seeks review and annulment of an award of compensation for a new and further disability. By findings and award of March 18, 1963, the commission determined that an injury sustained by Walter F. Walden, hereinafter referred to as applicant, on July 25, 1959, had produced neck and back disability equivalent to 6¼ per cent of total and that said disability became permanent on August 7, 1961.

Applicant filed a petition to reopen on or about September 30, 1963, alleging that his condition had changed and worsened and requesting a hearing on his claim for new and further disability. Following notice and hearing, on March 31, 1964, supplemental findings and award issued. The findings were that the injury of July 25, 1959, caused further temporary disability from May 1, 1963, to October 25, 1963, and thereafter during the continuance of disability, and that applicant was in need of further medical treatment to cure or relieve said injury.

On petition for reconsideration respondent Liberty Mutual Insurance Company, hereinafter referred to as petitioner, urged that the award of temporary disability benefits was erroneous for various reasons hereinafter discussed. By opinion and order of May 18, 1964, the petition was denied. Petitioner now seeks review and annulment of said supplemental award.

On July 25, 1959, applicant, while engaged in his work of sorting logs on the log pond at the U. S. Plywood Mill near Anderson, California, was struck on the upper back and left shoulder by a heavy "headache ball" suspended by a cable from a crane. He continued to work with only two or three days of missed employment until about June 1, 1961. During this period, however, he complained of head, neck and back pain, growing increasingly severe with the passage of time. After some time off, during which he was examined by physicians, he attempted to return to work but was unable to continue. He was off duty from June 13, 1961, until October 6, 1961, when he tried again to perform his work on the log pond, but the pain became so bad he had to leave the job on October 31, 1961. He did not return thereafter until the winter of 1963. In the meantime, after due proceedings taken, the findings and award of March 18, 1963, were made as above noted.

*Retired Presiding Justice of the District Court of Appeal sitting under assignment by the Chairman of the Judicial Council.

Prior to the findings and award of March 18, 1963, and in January of that year, applicant obtained employment as a school janitor. He worked three to six hours per day. However, when doing janitorial work his lungs bothered him, and he had to leave this part-time employment after a month or so because of severe wheezing and coughing. He consulted Doctor Harold T. Edwards, a duly licensed physician and surgeon. He first consulted Doctor Edwards May 1, 1963. The diagnosis was that he was suffering from asthma, which the physician found to be "partially due to restricted movement of left side of rib cage." The report stated further: "Particularly the rib subluxations and ship las subluxations of the neck are directly attributable to the blow on the back with the neurodermia and bronchial asthma as secondary complications of this blow." Doctor Edwards reported later that his manipulative treatment had restored normal movement to the rib cage and that applicant was no longer wheezing, but that a staphylococcus infection of the lung had developed. He stated his opinion as to its etiology as follows: "In my opinion the staphylococcus infection of the lung is a secondary infection superimposed on the bronchial asthma and directly attributable to the inability to clear the lungs because of restricted movement of the rib cage."

At the hearing on applicant's petition to reopen held on October 25, 1963, applicant told of the onset of the lung condition and how it made it impossible for him to continue the school janitorial job. He said with respect to the lung trouble that Doctor Edwards prescribed medicine which he was taking; that he was unable to do a day's work but if the improvement continued he thought he would work, as Doctor Edwards had predicted, "right after the first of the year."

On March 31, 1964, responsive to applicant's petition to reopen further disability, the commission filed its supplemental findings and award. Petition for reconsideration followed, was denied and this court's writ of review was issued.

Petitioner's first contention is that the supplemental award is unlawful because it does not by its terms limit liability for temporary disability payment to the 240-week period following injury. In this respect, the challenged award was for "Further temporary compensation from May 25, 1963, to October 25, 1963, and thereafter during the continuance of disability, at $50.00 a week." Applicant was injured on July 25, 1959. Section 4656 of the Labor Code then limited the employer's liability to pay temporary disability indemnity to the 240-week period immediately following injury. Under this rule

petitioner's liability to pay temporary disability benefits terminated February 29, 1964. Effective September 18, 1959, section 4656 was amended to continue to limit the amount of temporary disability benefits payable to 240 weeks but to extend the period following injury during which such indemnity was payable to five years. If this law applies here, petitioner's liability to pay temporary disability benefits terminated July 25, 1964. ■ The award, as is usual with awards for temporary disability, is an open-ended one, that is to say, no period is fixed during which temporary disability is to be paid. But that does not mean that the award is to be interpreted as being terminable only by further order. The validity of the order is not affected by the failure of the commission to specifically fix a date of termination. The law fixes an ultimate date beyond which it cannot go. (*Southwestern Surety Ins. Co.* v. *Pillsbury,* 172 Cal. 768, 773 [158 P. 762]; *National Engineering Corp.* v. *Industrial Acc. Com.,* 193 Cal. 422, 426 [255 P. 2].) This principle is not disputed by petitioner. ■ Noting, however, that as the law stood when the injury occurred, the limitation in question was 240 weeks beyond the date of injury and that a few months after the injury here involved the law was amended to provide compensation for 240 weeks within a period of five years after the date of injury, petitioner contends that, in fact, and by an opinion in the denial of its petition for reconsideration, the commission extended the time during which the award might be paid in accordance with the new section, thus giving that section, as petitioner contends, retroactive effect. In that opinion the commission stated: ''The argument that 240 weeks from the date of injury had elapsed on or about March 7, 1964, is contrary to the law. Section 4656 of the Labor Code, *as amended,* does not preclude applicant from receiving further temporary disability until 5 years from July 25, 1959, the date of injury.'' (Italics supplied.) Says the petitioner: ''It is to this language in the Panel's Opinion and Order (Denying Reconsideration) to which your petitioner now specifically objects. While the Supplemental Findings & Award might not have been objectionable on this point, the Panel has expanded the Findings & Award and increased your petitioner's liability by extending that liability until July 25, 1964.'' If the statute as amended were applied instead of the statute as it stood when the injury occurred, the result would have been the payment of weekly benefits beyond those authorized by the statute before amendment. But the award itself was not open to objection on this

issue, and the opinion of the commission is ineffective to enlarge the award. The award does not purport to go beyond the limit of the unamended statute, and it was open to petitioner when that time had elapsed to cease payment and bring the matter before the commission on proceedings to terminate. We cannot touch the matter here. As this record stands, it was an open-ended award, reconsideration was denied, and the award stands as made.

■ Petitioner next contends that applicant's petition to reopen was based on newly discovered evidence and therefore must be considered to have been brought under Labor Code section 5803 which requires that good cause be shown before the matter can be reopened for such cause. Respondents answer that applicant's petition did not invoke the continuing jurisdiction of the commission to rescind, alter or amend the initial award "good cause appearing therefor" because his petition was "upon the ground that the original injury has caused new and further disability," thus bringing the proceeding under Labor Code section 5410. We think respondents' position is correct. While it is true that the petition mentioned newly discovered evidence as one ground for reopening, it also alleged that the applicant's condition had changed and worsened, resulting in present total disability requiring further medical treatment. Reference was made to the diagnosis of Doctor Edwards, Exhibit B to the petition to reopen. The petition alleged that "Since the time of the issuance of said award: . . . (2) The applicant's condition has changed and worsened resulting in present total disability . . . ."

■ Petitioner next contends that there was no express finding that the injury had caused the new and further disability which was the foundation of the proceeding to reopen culminating in the challenged award. But we think that here petitioner is over-technical. The commission did find that the injury "caused further temporary total disability from May 1, 1963, to October 25, 1963, and thereafter." ■ Findings are to be liberally construed and this is particularly true in proceedings before the Industrial Accident Commission. (*Keeley* v. *Industrial Acc. Com.*, 55 Cal.2d 261, 271 [10 Cal. Rptr. 636, 359 P.2d 34].) ■ There was evidence about the onset of the disabling lung condition during the winter of 1963. This is the condition that the referee found to be new and further disability. We quote the following excerpt from the report of the referee on supplemental findings and award: "According to the medical report of Doctor Harold

T. Edwards, M. D., dated May 15, 1963, applicant was having further difficulty, particularly with his rib subluxations and ship las subluxations of the neck which he [Dr. Edwards] stated are directly attributable to the blow on the back with the neurodermia and bronchial asthma as secondary complications of this blow. Dr. Edwards attributes this disability to applicant's injury of July 25, 1959. He stated in his report of July 30, 1963, that applicant would be totally disabled at least until January, 1964.'' Certainly the parties recognized the issue of new and further disability. Respondents introduced reports of several physicians, all of whom declared that there was no connection between the difficulties reported by Doctor Edwards and the original injury, whereas Doctor Edwards said there was a causal connection. We think the findings are sufficient to sustain the award.

Petitioner further claims insufficiency of the findings in that there was no specific finding of a change of condition as a basis for a finding of new and further disability. But this contention ignores the rule that only ultimate findings are required. (*Truck Insurance Exch.* v. *Industrial Acc. Com.*, 36 Cal.2d 646 [226 P.2d 583].) Appellate courts, it has been said, ''should read into the general findings of the commission specific findings upon all factual issues that tend to support the award and which have substantial support in the evidence.'' (*Gaytan Engineering Co.* v. *Industrial Acc. Com.*, 95 Cal.App.2d 740, 742 [213 P.2d 737].)

Petitioner further contends that the record does not contain substantial evidence to support the finding that the injury of July 25, 1959, caused new and further disability from that compensated by the award of March 18, 1963. First, petitioner argues that there was no evidence of increase in the neck and back disability. With this respondents agree but they assert, and we think correctly, that the claim to compensation for new and further disability was not based upon increased neck and back disability but rather upon the onset of lung disability and its results, and this is supported by the opinion evidence of Doctor Edwards attributing applicant's lung condition to the injury of July 25, 1959, and by the testimony of applicant to the disabling effect thereof. Although petitioner attacks the evidence of Doctor Edwards and points out the conflicting opinion evidence of the other physicians, nevertheless, this was a conflict to be resolved by the commission and not by a reviewing court. The opinion of the single physician, though inconsistent with other medical

508

opinion in the record, is nonetheless substantial evidence and may be adopted by the commission. (*Allied Comp. Ins. Co.* v. *Industrial Acc. Com.,* 57 Cal.2d 115, 122 [17 Cal.Rptr. 817, 367 P.2d 409].)

■ Finally, petitioner attacks the supplemental award upon the ground that it should be annulled because it was made more than 40 days after 10-day notice of intention to submit. It appears that the following occurred: On February 6, 1964, the referee gave written notice to the parties that the case would be submitted for decision upon the record as it then stood 10 days thereafter, unless good cause to the contrary was shown in writing within said 10-day period. This notice issued following notification by petitioner to the referee that ''Unless applicant's counsel objects, I am willing that the case stand submitted upon the present record.'' Petitioner made no attempt to show good cause for further delay in submission and the supplemental award issued March 31, 1964. It thus appears that the award followed submission by approximately 42 days. Section 5313 of the Labor Code provides, in part: ''The commission, a panel, every referee or commissioner shall, within 30 days after the case *is* submitted, make and file findings . . . and an award, order, or decision stating the determination as to the rights of the parties.'' It is upon this statutory provision that petitioner grounds its final contention that the award should be annulled.

In support of its position petitioner cites a number of cases. *Kraft* v. *Lampton,* 13 Cal.App.2d 596 [57 P.2d 171], is cited. The case had to do with the validity of an order granting a motion for a new trial which was made beyond the statutory period allowed for the granting of such a motion. *Miller* v. *McKinnon,* 20 Cal.2d 83 [124 P.2d 34, 140 A.L.R. 570], is cited, which held that a contract which did not comply with the mandatory terms of the statutes was void. Petitioner quotes from *French* v. *Edwards,* 80 U. S. (13 Wall.) 506, 511 [20 L.Ed. 702], in which it was held that ''when the requisitions prescribed are intended for the protection of the citizen, and to prevent a sacrifice of his property, and by a disregard of which his rights might be and generally would be injuriously affected, they are not directory but mandatory. They must be followed or the acts done will be invalid. The power of the officer in all such cases is limited by the manner and conditions prescribed for its exercise.'' In *Sandrowski* v. *Sandrowski,* 230 Mo.App. 1056 [93 S.W.2d 81, 83], it was said that a mandatory provision is one the omission to follow which ren-

ders the proceeding to which it relates illegal and void. Provisions which relate to the essence of the thing to be done, that is, to matters of substance, are "mandatory." Citations could be made in a great number of cases treating the proper interpretation of statutory provisions as being mandatory or directory. In many of such cases the statute itself did not contain any express provision as to whether it should be operative in a directory sense, or in a mandatory sense, but, nevertheless, the statutes involved were held to be mandatory by reason of the nature of the acts with which they dealt. In this case, however, the Legislature has declared that the section involved, section 5313 of the Labor Code, is mandatory and not directory. This language appears now in section 5800.5 of the Labor Code wherein it says: "The 30-day period specified in Section 5313, shall run from the date of the submission of the application for decision and the provisions requiring the decision within such 30-day period shall be deemed mandatory and not merely directive." This latter language was not contained in the legislation as originally enacted. In *Coombs* v. *Industrial Acc. Com.*, 76 Cal.App. 565 [245 P. 445], the provision was held to be directory only. In *Peak* v. *Industrial Acc. Com.*, 82 Cal.App.2d 926 [187 P.2d 905], it was contended that failure to make a decision within the 30 days deprived the commission of jurisdiction. It was held that the commission did not lose jurisdiction. But both these cases were decided before the express language quoted and appearing now in the code had been placed therein. In short, it can be argued that the present statutory language declaring the 30-day limitation to be mandatory and not merely directory was placed in the code after the preceding section had been declared directory only. But for the Legislature to declare that a section is mandatory does not necessarily mean that a failure to comply with its provisions causes a loss of jurisdiction to make any decision whatever. In *Peak* v. *Industrial Acc. Com.*, *supra,* the court said at page 932: "Petitioner contends that the commission lost all jurisdiction to make any award because it did not file its findings within 30 days of the final hearing. To follow this argument to its logical conclusion would mean that the commission never can make an award to petitioner for the disability consequent upon his injuries. . . . To hold that a failure of the commission to so act within the prescribed period causes the commission to lose jurisdiction to make an award to an injured employee, would be absurd." In many cases to interpret the statutory language as we are

urged to do would be to declare that through failure to act the jurisdiction of the commission to make any award at all would be lost, and this without any fault of the party seeking relief. By the mere inaction of the commission a right would be denied, the aggrieved party being helpless to prevent in any way the complete denial of his right. Notwithstanding the language of the code as it now stands, we believe that to ascribe any such intention to the Legislature would still be as absurd as such a contention was declared to be before the statutory language was changed. If the Legislature had intended to work so monstrous a result, it surely ought to have said so by language specifically declaring such intent. It did not do so. We hold that the commission did not lose jurisdiction and that the award it made was valid notwithstanding the failure to obey the statutory mandate respecting the time within which it ruled after submission. We think the Legislature, concerned with complaints of delay in the disposition of Industrial Accident Commission cases, intended only to place the commission in such a position that it could be mandated to act if it took more time than the short period allotted. But that the Legislature intended to destroy rights is incredible.

The award is affirmed.

Pierce, P. J., and Friedman, J., concurred.