[Civ. No. 238. Fifth Dist. Oct. 11, 1963.]

ARGONAUT INSURANCE COMPANY et al., Petitioners, v. INDUSTRIAL ACCIDENT COMMISSION and LOLA LEE CUDDY, Respondents.

Hanna & Brophy and Donald R. Brophy for Petitioners.

Everett A. Corten, Robert A. Borgen, Brundage, Hackler & Roseman and Steven Roseman for Respondents.

CONLEY, P. J.— Argonaut Insurance Company and M. J. Hermreck, Inc., were granted a writ of review directed toward the consideration of an award of $17,500 as a death benefit made by the Industrial Accident Commission to Lola Lee Cuddy, widow of decedent, James J. Cuddy. In the process, the original decision of the trial referee denying relief was set aside by the commission, and the present conclusion reached by it on reconsideration.

James J. Cuddy died November 10, 1961, as the result of an automobile accident near Shaver Lake in Fresno County. He had been employed by petitioner M. J. Hermreck, Inc., at a mountain subdivision known as Tamarack Pines Estates as a working foreman of a crew constructing cabin sites and laying pipe. The area is only a few hundred feet from Highway 168 and is located between Huntington Lake and Shaver Lake in the Sierra Nevada Mountains, at an elevation of approximately 7,200 feet; it is some 250 miles from decedent's home at Orcutt, California.

The job was completed for the season at about 2 p.m. on November 10, 1961; decedent was the last to leave the work-

site, at approximately 4 p.m. Highway 168 leads from Huntington Lake to the town of Shaver Lake, where there is a post office, and thence to the floor of the San Joaquin Valley. It is the best, and in fact the only reasonably available, road from the place where the work was being done to the Shaver Lake post office. On the way to Shaver Lake, decedent's car, still on its four wheels, skidded on loose gravel, left the highway and went over the mountainside, fatally injuring Mr. Cuddy. Highway Patrolman William R. Anderson, who investigated the accident in the course of his duties, testified that the two-lane road at that point was "good" and was posted for a maximum speed of 65 miles per hour, that the pavement was dry, and the weather clear at the time of the fatal occurrence.

Petitioner Hermreck, Inc., was insured as to liability for injuries arising under the workmen's compensation laws by petitioner Argonaut Insurance Company. Hearings were held before Referee Rolf V. Gadebusch, of the Industrial Accident Commission, on the claim for a death benefit filed by respondent Lola Lee Cuddy. On November 30, 1962, findings and an order were filed denying the claim on the ground that the injury and death, "did not arise out of and occur in the course of his employment"; Mrs. Cuddy's timely petition for reconsideration was granted by panel one of the commission, and on January 30, 1963, it issued the opinion and order after reconsideration, which is the subject of the petition for the writ of review. Petitioners ask that the award be vacated and that the order of the trial referee denying a death benefit be reinstated.

The basic question raised by the petition is whether there is legally sufficient evidence to support the finding that the injury and death arose out of and in the course of decedent's employment. It is conceded that the decedent was driving his own car at the time of the accident and that no transportation was furnished by the employer either to or from the job. The amount of wages was measured by elapsed time at the jobsite. The pay week ended Wednesday; it was the established practice of the timekeeper to telephone the men's time to the Nipomo office of the company some 250 miles to the southwest; checks were made out there and mailed to the timekeeper at the Shaver Lake Post Office. In most instances the checks reached Shaver Lake by the Friday following the end of the work week, but sometimes not until the following Monday. Customarily, the workmen would drive to Shaver

Lake on Friday, meet the timekeeper there and pick up their checks, if available; anyone who did not do so would be given his check on the following Monday at the jobsite during the period that the work was still in progress.

The employees received advance notice that their employment would terminate on Friday, November 10, 1961; they worked until 2 p.m. on that date, cleaned up, prepared for departure, packed and left in their own automobiles toward the Shaver Lake Post Office. Decedent was the last to leave the work area.

Throughout the case petitioners have urged that the decedent was on his way home and was merely going to stop in Shaver Lake to pick up his paycheck for his own convenience. Respondent commission on the other hand maintains that this was not merely an incidental stop, but a most important aspect of activities of both employer and employee, in that Mr. Cuddy would be calling for and receiving his paycheck at the conclusion of a week's work and after the termination of his employment.

The only reference in the record as to what the intention of the decedent was as to his ultimate destination when he left the jobsite was the testimony of a coworker named Harry A. Byram:

"Q. Did he [Mr. Cuddy] tell you anything about what he was going to do when he left the jobsite? A. Well, no, not in particular, other than it was just that we would meet in Shaver Lake."

Mr. Byram further testified as follows:

"Q. Did Mr. Cuddy indicate to you that he was going to return to the Coast that day? A. No, I guess I just accepted that. I figured that is where he was going. He never suggested he was going home as far as I knew."

Walter Meier, the timekeeper on the job, was asked how frequently the employees were paid at Shaver Lake as opposed to being paid on the jobsite, and he replied: "Most of the time." The respondent commission concludes, therefore, that only occasionally were the employees paid on the jobsite and that Shaver Lake should be considered the regular place of payment as opposed to the work area. Mr. Meier further testified:

"Q. And if they were not available to be handed out on the job, the men were to meet at Shaver to pick up the checks? A. Yes."

The commission contends that the words, "the men were to meet at Shaver," contain an "inference of direction, instruction and control of the agent of the employer, that is, the men were, in fact, instructed to report to Shaver Lake to pick up their checks."

Employee Byram further testified:

"Q. Now, to your knowledge, were the men given any instructions on obtaining their checks on November 10, 1961? A. Yes.

"Q. What instructions were they? A. That we call at the Post Office and see if the checks were come in by mail, and if they were, we would get them there."

Counsel for the commission argue that it is merely incidental that the geographical position of decedent's home required him to pass Shaver Lake on his way there and that there is nothing in the record compelling the conclusion that Mr. Cuddy was en route to Shaver Lake merely as a part of his journey to Orcutt.

The status of an employee acting in the course of his employment is not destroyed by the fact that he may be pursuing a dual purpose. If he is carrying out some duty or right in connection with his employment, and combines with it an object of his own, he is still considered to be acting in the course of his employment. As is said in *Lockheed Aircraft Corp.* v. *Industrial Acc. Com.*, 28 Cal.2d 756, 758-759 [172 P.2d 1]:

". . . where the employee is combining his own business with that of his employer, or attending to both at substantially the same time, no nice inquiry will be made as to which business he was actually engaged in at the time of injury, unless it clearly appears that neither directly or indirectly could he have been serving his employer."

(See also *Leonard Van Stelle, Inc.* v. *Industrial Acc. Com.*, 59 Cal.2d 836, 840 [31 Cal.Rptr. 467, 382 P.2d 587]; *Phoenix Indem. Co.* v. *Industrial Acc. Com.*, 31 Cal.2d 856, 861 [193 P.2d 745]; *Employers' etc. Corp.* v. *Industrial Acc. Com.*, 37 Cal.App.2d 567, 570 [99 P.2d 1089].)

The commission also points out that in its opinion a benefit inured to the employer in having the employees pick up their paychecks at Shaver Lake, in that the employer was for practical purposes faced with the alternative of having the timekeeper go to Shaver Lake to secure the paychecks at the post office and return to the jobsite, a total distance of 24 miles to make the payment of wages upon the jobsite or make some

other arrangement involving time and expense to effect payment to the workers; it is argued that the employer apparently elected to have the employees proceed to Shaver Lake to get their checks in view of the obvious time which would be lost by the timekeeper in making the trip during working hours. The commission points out that if a timekeeper had been involved in an automobile accident while on his way to Shaver Lake to secure the paychecks and return with them to the jobsite, an injury sustained by him during that mission would have been within the course and scope of his employment and would have been covered by workmen's compensation insurance; its counsel argue that there is no difference insofar as liability is concerned between the timekeeper's proceeding to Shaver Lake to pick up the checks and the employees themselves going to Shaver Lake to secure their pay under the direction of the employer.

The respondent commission also cites Labor Code section 201, which states that:

"If an employer discharges an employee, the wages earned and unpaid at the time of discharge are due and payable immediately";
and points out that the law enforces a penalty upon an employer who wilfully fails to comply by providing in Labor Code section 203:

"If an employer wilfully fails to pay, without abatement or reduction, in accordance with sections 201 and 202, any wages of an employee who is discharged or who quits, the wages of such employees shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced; ..."

The argument is made that these Labor Code sections cast upon the employer the duty to pay accrued wages thus promptly upon the termination of employment and the fact that the decedent was required to travel to Shaver Lake to receive his paycheck further benefited the employer in that respect. It would seem, however, that these sections of the Labor Code refer by their terms to a situation where an individual workman is actually discharged, or to use the vernacular, "fired," during the course of his employment and that the Legislature did not intend these sections to include a situation where seasonal work being done by the entire crew was terminated.

Petitioners rely principally on two cases: *Fireman's Fund*

*Indem. Co.* v. *Industrial Acc. Com.*, 123 Cal.App. 142, 146 [11 P.2d 1114]; *Robbins* v. *Yellow Cab Co.*, 85 Cal.App.2d 811, 814 [193 P.2d 956]. The first of these decisions involved an injury to an employee who had worked for a few days on a railroad construction job and quit. The timekeeper gave him a statement of the amount due and advised him that he would have to go to the town of Lassco, some 15 miles away if he desired to get his wages from the company paymaster. He "thumbed a ride" in a car driven by another person, and suffered injuries while on the way to Lassco. The District Court of Appeal in discussing the case called attention to the fact that the employment had terminated and that:

"After that moment the employers did not have, and did not attempt to exercise, any power of direction or control over the activities or movements of the claimant. There is no claim that after that moment the claimant directly did anything in furtherance of the master's business; but the sole claim is that some of his acts were incidental thereto. If so the claimant should have known the facts; the burden rested on him to bring himself within any exception to the general rule. He failed to do so and he was not entitled to compensation."

There is a distinct difference between the facts in that case and in the present litigation. The employees here were directed by the employer to proceed to Shaver Lake to pick up their paychecks; that was the testimony of Mr. Meier, timekeeper on the jobsite; he testified that the men were instructed to call at the post office at Shaver Lake to obtain their pay on November 10, 1961, and there is no contradictory evidence, even though M. J. Hermreck and his brother, Earl Hermreck, were present at the hearing and were called as witnesses. It would seem, therefore, that the employer was satisfied with the testimony of Mr. Meier regarding the fact that the men were in fact directed to report to Shaver Lake.

The second case, *Robbins* v. *Yellow Cab Co.*, *supra*, 85 Cal.App.2d 811, 814, held that an employee who was on the employer's premises during nonworking hours to collect wages of her husband and herself was not acting in the course of her employment so as to bar an action by her in the courts for negligence:

"In the instant case the appellant was a cashier on the graveyard shift. She could have received her paycheck at the commencement of her shift that evening. Instead, she took advantage of the liberal policy of respondent and entered the

premises at 3 o'clock in the afternoon. Such policy was for the convenience of its employees, not of respondent. The procurement of her check and that of her husband was an extracurricular endeavor by her in no way related to her employment. Appellant herein might just as readily have been subjected to the hazard of the washrack even though she had never worked a day for respondent. Thus her injury was neither one 'arising out of or in the course of employment,' nor while she was 'performing service growing out of and incidental to employment,' nor 'proximately caused by the employment.' (Lab. Code, § 3600.)''

The finding of fact in that case is not controlling here in view of the testimony hereinbefore quoted which was accepted by the commission.

 We conclude that there is substantial evidence to support the contention of the commission that the action of the workmen in going to Shaver Lake was an activity, "to be reasonably contemplated and anticipated and incidental to the employment relationship."

In *Pacific Indem. Co.* v. *Industrial Acc. Com.,* 26 Cal.2d 509, 513 [159 P.2d 625], it is said:

"The test is stated in *Employers' etc. Corp.* v. *Industrial Acc. Com.,* 37 Cal.App.2d 567, 573 [99 P.2d 1089]: 'The true rule to be derived from the cases is that the injury is compensable if received while the employee is doing those reasonable things which his contract of employment expressly or impliedly authorizes him to do.' ''

And *Reinert* v. *Industrial Acc. Com.,* 46 Cal.2d 349, 356 [294 P.2d 713] holds:

"There is ample authority to support petitioner's contention that an injury is compensable if it results from an activity contemplated by the employment, even though it occurs in a location not directly owned or controlled by the employer [citations]."

The fact that if the men were not paid on Friday at Shaver Lake because the checks did not arrive they presumably would have been paid otherwise in person or by mail, is not persuasive as against the award in view of the fact that they were acting at the direction of their employer and in a method and manner incidental to the employment relationship.

In *State Employees' Retirement System* v. *Industrial Acc. Com.,* 97 Cal.App.2d 380, 382-383 [217 P.2d 992], the court said:

"In reviewing the evidence we are not permitted to substitute our views for those of the commission and annul an award unless there is no substantial evidence to support the findings and order. (*Riskin* v. *Industrial Acc. Com.*, 23 Cal. 2d 248, 254 [144 P.2d 16].) On the contrary, we are required to indulge all reasonable inferences which may be drawn legitimately from the facts in order to support the findings of the commission, and in doing so all that is required is reasonable probability; not absolute certainty. [Citing cases.] It is the duty of a reviewing court to search the record to discover whether the evidence is reasonably susceptible of the inferences drawn by the commission in support of its conclusions, and upon favorable discovery to affirm the award. (*Coborn* v. *Industrial Acc. Com.*, 31 Cal.2d 713 [192 P.2d 959].) Neither may the award be annulled because there are two conclusions which fairly may be drawn from the evidence, both of which are reasonable, the one sustaining and the other opposing the right to compensation. [Citing cases.] Nor may an award be rejected solely on the basis of moral or ethical considerations."

In *Western Pacific Railroad Co.* v. *Industrial Acc. Com.*, 193 Cal. 413, 417 [224 P. 754], the court said:

"It is a well-recognized rule that the findings of the Industrial Accident Commission upon questions of fact are conclusive and are not subject to review where there is any substantial evidence to support them. [Citing authorities.] That is to say, the Commission is the final arbiter where there is a conflict in the evidence or where opposing inferences may reasonably be drawn. [Citing cases.] It is the rule that where from the evidence two opposing inferences may be drawn, that inference which is accepted by the Commission must be sustained if there is evidence in the record to support it and if it is a reasonable inference to be drawn from that evidence."

The rule with respect to special missions as distinguished from the coming and going rule is thus set forth in *Shell Oil Co.* v. *Industrial Acc. Com.*, 199 Cal.App.2d 426, 428-429 [18 Cal.Rptr. 540]:

"The governing principle is stated in *Boynton* v. *McKales*, 139 Cal.App.2d 777 [294 P.2d 733], a case involving a parallel situation. The court said, at page 789:

" 'If the employee is not simply on his way from his home to his normal place of work or returning from said place to his home for his own purpose, but is coming from his home or

returning to it on a special errand either as part of his regular duties or at a specific order or request of his employer, the employee is considered to be in the scope of his employment from the time that he starts on the errand until he has returned or until he deviates therefrom for personal reasons. [Citations.] To such special missions the general test as to scope of employment applies. It is not necessary that the servant is directly engaged in the duties which he was employed to perform, but included are also missions which incidentally or indirectly contribute to the service, incidentally or indirectly benefit the employer. [Citations.]' '' (See also *Self* v. *Hanson,* 305 F.2d 699, 703.)

■ This court cannot exercise an independent judgment on the evidence, and its inquiry must end if there is legally sufficient evidence in the record to support the commission's finding. The Supreme Court in recent decisions has stressed the rule limiting an appellate court's right of review of the evidence by stating that *any* evidence supporting the findings is sufficient to require the affirmance of an award. Thus, in an opinion written by Mr. Justice McComb (*Douglas Aircraft, Inc.* v. *Industrial Acc. Com.,* 47 Cal.2d 903, 905 [306 P.2d 425]) the Supreme Court says:

"When a finding of fact of the Industrial Accident Commission is attacked on the ground that there is not any substantial evidence to sustain it, the power of an appellate court *begins* and *ends* with a determination as to whether there is any substantial evidence, contradicted or uncontradicted, which will support the finding of fact.

"The findings of the commission are not subject to review on this ground except insofar as they may have been made without any evidence whatever in their support. [Citing cases.]''

And in the more recent opinion in *Gonzales* v. *Industrial Acc. Com.,* 50 Cal.2d 360, 364 [325 P.2d 993], Mr. Justice McComb again stresses the fact that:

"Findings of the Industrial Accident Commission are not subject to review on the ground that there is no substantial evidence to sustain them, except insofar as it may appear that they have been made without *any* evidence whatever in their support.''

(See also 2 Witkin, Summary of Cal. Law, Workmen's Compensation, §§ 136-144, pp. 1769-1776.)

■ The court owes the duty to draw all reasonable

inferences which the record justifies in order to sustain the commission's findings. *(Leonard Van Stelle, Inc. v. Industrial Acc. Com., supra,* 59 Cal.2d 836, 839; *Phoenix Indem. Co. v. Industrial Acc. Com., supra,* 31 Cal.2d 856, 859; *State Employees' Retirement System v. Industrial Acc. Com., supra,* 97 Cal.App.2d 380, 382.)

It should be kept in mind also that the state has by repeated indications in both the legislative and judicial fields emphasized that it insists upon a liberal policy of construction in favor of the employee and that any reasonable doubt as to whether an act was contemplated by the employment must be resolved in favor of the employee or his heirs in case of his death. *(Leonard Van Stelle, Inc. v. Industrial Acc. Com., supra,* 59 Cal.2d 836, 841; *Reinert v. Industrial Acc. Com., supra,* 46 Cal.2d 349, 354; *California Casualty Indem. Exch. v. Industrial Acc. Com.,* 21 Cal.2d 751, 760 [135 P.2d 158].)

The award is affirmed.

Brown (R.M.), J., and Stone, J., concurred.