Walter NIKOLA, Plaintiff-Appellee,

v.

HAVEN HARBOR, INC., d/b/a Lake Shore Restaurant and Lounge, Defendant-Appellant.

Supreme Court of Tennessee, at Knoxville.

Aug. 17, 1981.

Kenneth R. Starr, Chattanooga, for defendant-appellant.

Thomas M. Fleming, Chattanooga, for plaintiff-appellee.

## OPINION

BROCK, Justice.

This is a worker's compensation case. The trial court awarded benefits to the employee and the employer has appealed.

The defendant-employer is engaged in the restaurant and catering business and employed the plaintiff to assist therein. The defendant owned a van which was equipped with refrigeration apparatus for use in its catering business. It was part of the plaintiff-employee's duties to operate this van. The van developed a defect which made it impossible to start the engine and it was towed by a wrecker to the automobile repair shop operated by Sears, Roebuck and Company and left there for repairs. Later, Mr. Haven, the sole owner of the stock of the defendant corporation, accompanied by the plaintiff, went to the Sears auto shop to get the van but, upon arrival, learned that the repairs had not been completed so that the engine could be started by turning the ignition switch in the regular way. However, one of Sears' mechanics demonstrated to the plaintiff and to Mr. Haven that the van could be started by touching a screwdriver to the starter and to another point on the engine. This mechanic apparently did not know and certainly did not explain to the plaintiff and Mr. Haven that this "jump starting" technique could be accomplished while the gears of the van were engaged.

The defendant was obligated to cater a party the following day and desperately needed the van and its refrigeration equipment to carry out that task and for this reason ordered the plaintiff to employ the screwdriver starting technique and take the van to his home and keep it there overnight so that he could take it very early the next morning back to the Sears auto shop so that it could be repaired in time for its use in the afternoon to cater the party mentioned. The defendant was convinced that this was the only means whereby the van could be repaired in time to be of use in the catering job. When the plaintiff pointed out to his employer that his own automobiles, both of them, were at the defendant's place of business and that it would be essential that he have transportation to attend his daughter's high school graduation exercise that night, the employer still insisted that the plaintiff leave his own automobile at the defendant's place of business and drive the van to his home, as above mentioned, and to use the van in going to and from the plaintiff's daughter's graduation exercise. The Chancellor found as a fact that the defendant insisted upon this procedure and indeed the record does support that finding. In fact, the attorney for the appellant has conceded that fact in this Court.

The plaintiff did as directed and took the defective van to his home that night and used it to transport himself and members of his family to his daughter's graduation exercise. After the graduation exercise was concluded, the plaintiff, while attempting to use the screwdriver technique for starting the engine, received serious injuries when the automobile lurched forward "like a goat," crushing the plaintiff against the wall of a building.

The Chancellor, relying upon our recent cases of *Hudson v. Thurston Motor Lines, Inc.*, Tenn., 583 S.W.2d 597 (1979); *Bell v. Kelso Oil Co.*, Tenn., 597 S.W.2d 731 (1980) and *Watson v. United States Fire Insurance Company*, Tenn., 577 S.W.2d 668 (1979), held that the plaintiff's injuries did in fact arise out of and in the course of his employment. We quote from the memorandum opinion of the Chancellor as follows:

"At that time, after finding out that Sears could not repair the van, Mr. Haven insisted that Mr. Nikola take that van. And he testified that Mr. Nikola explained that he had to take his daughter to a graduation ceremony that night and that Mr. Haven knew that both of Mr. Nikola's vehicles were at Lakeshore Restaurant and that he knew that Mr. Nikola would have to use the van to go to the

graduation ceremony. But he wanted him to take the van because if Mr. Nikola took his personal automobile home, he would have to cross Chickamauga Dam the next day, the next morning, and drive to the Lakeshore Restaurant, pick up the van, and then take it to be repaired. "He needed the vehicle repaired as soon as possible because the van had refrigeration equipment, and there was a party they needed the van and refrigeration equipment for so that they could cater it on May 15, 1979.

"Mr. Haven was afraid that if Mr. Nikola drove across Chickamauga Dam to pick up the van, he wouldn't be able to get it to the repair shop in time to get it repaired before they needed to leave to cater the party.

"With those facts in mind, the Court concludes that Mr. Nikola's use of the van for transportation to and from his daughter's graduation ceremony was not by choice on his part nor for his benefit, but was solely for the benefit of his employer and at the insistence of his employer.

"Particularly is this true when Mr. Haven says that he knew that Mr. Nikola was going to go to that graduation ceremony. And certainly nothing could be more important to a father than his daughter's graduation ceremony.

"Mr. Haven insisted that he use that van in its defective condition for transportation to that graduation ceremony. While the ceremony itself was not part of the employer's business, the use of that employer-owned defective van was mandated and required by his employer and, in the mind of this Court, establishes a causal connection between the injury and the duties of his employment and that this injury did, in fact, arise out of and in the course of the employment as required by the statute."

We affirm the decision of the Chancellor.

The facts of this case may be unique; indeed, we have found no case in which the employer has insisted that the employee forego use of his own automobile and, instead, take the employer's automobile to his home and use it for his own personal purposes overnight in order that he might take it early the next morning to a repair shop for necessary repairs. By making this insistence, the employer made the employee's use for personal purposes of the employer's vehicle a part of the business of the employer and, thus, extended coverage of the Worker's Compensation Act to any injury which arose out of and in the course of such use of the vehicle by the employee.

"While the question whether a trip taken by an employee in the interest of both himself and his employer is to be regarded as the latter's, so as to warrant allowance of workmen's compensation for injuries sustained in the course thereof, or his own, is in a sense a question of fact, it is a question that must be determined by the application of some legal test or standard. The test ordinarily employed for determining liability in such a case is that, if the work of the employee creates the necessity for travel, he is in the course of his employment though he is serving at the same time some purpose of his own. . . .

"An employee's status of acting in the course of his employment is not destroyed by the fact that he may be pursuing a dual purpose. The dual purpose doctrine allowing compensation applies where a special trip would have had to be made for the employer if the employee had not combined the service of the employer with his own going or coming trip." 82 Am.Jur.2d *Workmen's Compensation* § 288 (1976) at 70.

See, *Argonaut Insurance Co. v. Industrial Accident Com'n*, 221 Cal.App.2d 140, 34 Cal. Rptr. 206 (1963); *Burchett v. Delton-Kellogg School*, 378 Mich. 231, 144 N.W.2d 337 (1966).

In the instant case, the employer not only authorized and permitted the use of his van by the employee for the purpose of attending his daughter's graduation exercise but, indeed, directed that he so use it, so that the repairs could be completed before Noon, thereby making the van available for use in catering a party in the afternoon. Clearly

then, as found by the Chancellor, the plaintiff's use of the van in going to his daughter's graduation exercise was not solely for his own benefit but also for the benefit of the employer and his injuries arising out of such use were injuries arising out of and in the course of his employment under the peculiar facts of this case.

We reaffirm an observation we made in *Bell v. Kelso Oil Company, supra,* as follows:

"Generally, an injury arises out of and in the course of the employment if it has a rational causal connection to the work and occurs while the employee is engaged in the duties of his employment; and, any reasonable doubt as to whether an injury 'arose out of the employment' is to be resolved in favor of the employee." 597 S.W.2d at 734.

The decree of the Chancellor is affirmed and this cause is remanded to the trial court for further proceedings consistent with this opinion. Costs of this appeal are taxed to the appellant.

HARBISON, C. J., and FONES, COOPER and DROWOTA, JJ., concur.