710 So.2d 132 (1998)
Danny EVANS, Appellant,
v.
HANDI-MAN TEMPORARY SERVICES and RISCORP, Appellees.
No. 97-960.
District Court of Appeal of Florida, First District.
April 17, 1998.
*133 William H. McKnight of William H. McKnight, P.A., Tampa, for Appellant.
Lamar D. Oxford of Dean, Ringers, Morgan & Lawton, Orlando, for Appellees.
BENTON, Judge.
This case requires us to decide whether a day laborer who was injured traveling from a job site to another location designated by his employer in order to turn in a time card and pick up his pay check was engaged in "travel necessarily incident to performance of the employee's job responsibility." § 440.092(4), Fla. Stat. (1995). We conclude that Danny Evans's trip to collect his pay was necessarily incident to his work and that any injury Mr. Evans may have suffered in a traffic accident en route would be compensable. We reverse the order dismissing his petition for benefits and remand for further proceedings accordingly.
In the fall of 1995, Mr. Evans was "a somewhat irregular employee of" Handi-Man Temporary Services (Handi-Man). Handi-Man is in the business of furnishing temporary labor for other enterprises by contracting out its own employees' services. On the morning of October 20, 1995, Mr. Evans reported to Handi-Man's office, where he was given a "job ticket" indicating he was to work at a moving company that day.
He rode from Handi-Man's office to the moving company as a passenger in a pickup truck driven (and presumably owned) by Robert Panazze, a fellow day laborer. Informed, once there, that he was not properly dressed for work at the moving company, Mr. Evans telephoned the Handi-Man office.
Somebody in the office directed him to report for a different job at a different location nearby, where he ended up working for some ten hours. Afterwards, walking back toward the moving company, Mr. Evans spotted the pickup truck in traffic and flagged Mr. Panazze down. They then set out together for the Alamo to pick up their pay checks.
Mr. Evans alleges he was injured in a traffic accident on the way, but the judge of compensation claims made no findings as to his injuries, if any. The order under review found that the accident had been duly reported to Handi-Man but concluded that Mr. Evan's "desire to travel to the alternate point made available and pick up his check was his own personal decision, for his convenience." On this basis the judge of compensation claims ruled: "I do not find this activity to have arisen out of and in the course of his employment with this employer."
Handi-Man did not require its employees to pick up their checks every day. Nothing prevented their waiting until the end of the work week for their checks. But about half of the laborers working for Handi-Man collected their checks at the end of each day they worked. Whenever laborers failed to claim their checks before Handi-Man closed its office for the day, a Handi-Man employee left the checks at the Alamo, which the witnesses testified was a store, but the judge of compensation claims characterized as a bar. Handi-Man's employees were informed that they could turn in completed time cards and *134 pick up their checks after office hours at the Alamo.
An employee required to travel from one job site to another and "actively engaged" in doing so is eligible for workers' compensation benefits because such travel is "travel necessarily incident to performance of the employee's job responsibility." § 440.092(4), Fla. Stat. (1995). See, e.g., Dade County Sch. Bd. v. Polite, 495 So.2d 795 (Fla. 1st DCA 1986)(holding that a school teacher returning to school from an athletic event to drop off equipment was in the course and scope of employment when injured in a car accident); Schoenfelder v. Winn & Jorgensen, P.A., 704 So.2d 136 (Fla. 1st DCA 1997)(holding that an attorney injured leaving his home while getting into his car to drive to a deposition after preparing for the deposition at home was in the course and scope of employment because he was traveling between two work sites). See also Lucas v. Lucas, 212 Va. 561, 186 S.E.2d 63 (1972).
The going and coming rule, codified in section 440.092(2) Florida Statutes (1995), does not apply in the present case because Mr. Evans was neither going to work (from home) or coming home from work. See Schoenfelder, 704 So.2d at 137. The decision in Oliver v. Faulkner Wood Company, 531 So.2d 675 (Ala.Civ.App.1988) is instructive in this regard. There the lower tribunal found that the going and coming rule precluded coverage on the following facts:
Upon conclusion of their work day, Junior Oliver and Nathaniel Oliver, along with Theoluster Pugh and C.B. Graves, got into Junior Oliver's car to ride back to Old Blue's Stand. Theoluster Pugh was riding back to the store so he could meet up with Joe Lewis Rump and catch a ride back to Union Springs to watch a parade. Nathaniel Oliver was riding back to the store to get his week's pay and was then going to ride with Junior Oliver to the parade in Union Springs. On the way back to the store, an auto accident involving Junior Oliver's car took place for which Theoluster Pugh and Nathaniel Oliver claim workmen's compensation benefits.
531 So.2d at 677 (emphasis omitted). On review, the Alabama Court of Civil Appeals held that Nathaniel Oliver's trip to the store to get his pay did not fall within the going and coming rule.
This case, therefore, does not fall within the general rule that commuting to and from work is not covered by the workmen's compensation laws. This is so since, when the accident occurred, Oliver was not returning directly home or to the parade, but to a spot where he was told that he would be paid. Such travel is properly understood to be within the course of one's employment as Larson points out.
Id. at 678 (citation omitted). Here, Mr. Evans was traveling directly from the work site to the Alamo where Handi-Man had specified he could pick up his pay check. He was en route between one place at which necessary employment activities had transpired and another employer-designated place for activity connected with employmentturning in time cards and picking up pay checks. Only after accomplishing those tasks would his journey home from work have begun, for purposes of the going and coming rule.
"The contract of employment is not fully terminated until the employee is paid, and accordingly an employee is in the course of employment while collecting her or his pay." 2 Arthur Larson & Lex K. Larson, Larson's Workers' Compensation Law § 26.31, at 5-348 (1997). We have so held. Phillips v. Unicare Amelia Island, Inc., 458 So.2d 50, 52 (Fla. 1st DCA 1984)(citing 1A Arthur Larson, The Law of Workmen's Compensation § 26.30). In Phillips, we affirmed summary judgment for an employer who claimed workers' compensation immunity precluded a negligence action brought by a former employee allegedly injured two weeks after her job had ended while collecting her pay "in accord with the employer/defendant's normal mode of payment." Id. at 53. See Elmer E. Stockman Jr., Constr. Co. v. Industrial Comm'n, 463 S.W.2d 610 (Mo.Ct.App. 1971).
We join other courts which have held that an employee traveling from a job site to collect a pay check at an employerdesignated pickup point is in the course and scope of employment. See Oliver (holding *135 that an employee injured while on his way from the work site to a store to pick up his paycheck as instructed by his employer was in the course and scope of employment); Argonaut Ins. Co. v. Industrial Accident Comm'n, 221 Cal.App.2d 140, 34 Cal.Rptr. 206 (1963)(holding that an employee killed on his way from the work site to a post office where he was told his pay check would be waiting after work was in the course and scope of his employment). In Argonaut, the court said:
The fact that if the men were not paid on Friday at Silver Lake because the checks did not arrive they presumably would have been paid otherwise in person or by mail, is not persuasive as against the award in view of the fact that they were acting at the direction of their employer and in a method and manner incidental to the employment relationship.
Id. 34 Cal. Rptr. at 210. We agree with the Argonaut court that it is immaterial whether an employee has other means of obtaining a pay check, so long as the employee is acting "in a method and manner" authorized by the employer. See also L.E.L. Constr. v. Goode, 849 P.2d 876 (Colo.Ct.App.1992)(holding that an employee killed while returning to the work site from the business office where he had gone to pick up a pay check early in anticipation of leaving on vacation was in the course and scope of employment), reversed on other grounds, 867 P.2d 875 (Colo.1994).
We therefore reverse the order dismissing Mr. Evans's petition for benefits and remand for further proceedings consistent with this decision. A day laborer who picks up a pay check at the end of the day is acting within the course and scope of his or her employment. In the order under review, the judge of compensation claims found that, in order to be paid for the day's work, Mr. Evans was on his way from the job site to the Alamo and that Handi-Man had selected the Alamo as the place for its employees to turn in time cards and collect their pay after hours. An employee traveling from the job site to another location designated by his employer to pick up a pay check is engaged in "travel necessarily incident to performance of the employee's job responsibility." § 440.092(4), Fla. Stat. (1995).
Reversed and remanded.
ERVIN and VAN NORTWICK, JJ., concur.