855 So.2d 1182 (2003)
Jose RAMIREZ, Appellant,
v.
W.S. FARISH, Jr. d/b/a Lane's End Farm and Brentwood Management Services, Inc., Appellees.
No. 1D02-0670.
District Court of Appeal of Florida, First District.
October 7, 2003.
*1183 Jason T. Selwood, Esquire of Hoffman, Moore, Baisden & Selwood, Lauderdale by the Sea, for Appellant.
*1184 L.L. Roane, III, Esquire of Schofield & Wade, Pensacola, for Appellees.
BENTON, J.
In this workers' compensation case, Jose Ramirez, who worked as a groom, appeals the ruling that he was outside the course and scope of his employment when a motor vehicle ran him down early on the afternoon of January 14, 2000. At the time, he was riding a bicycle and had with him a sack filled with laundry, including "barn laundry" he had to wash for his employer, a horse farm. We reverse.
The employer does business as Lane's End Farm (Lane's End) in Versailles, Kentucky. At the time of the accident, Lane's End was participating in a meet at Gulfstream Park in Hallandale, Florida. During the meet, Lane's End housed Mr. Ramirez in a dormitory in or adjacent to stables at the racetrack. On the assumption that Mr. Ramirez traveled with the horses (and would not have been living at the stables if his permanent residence were elsewhere in or near Hallandale), Mr. Ramirez was a traveling employee.
"[A] traveling employee is deemed to be in the continuous conduct of his employer's business including those times when he is not actually at work but is engaged in ... normal and necessary[1] activities." Leonard v. Dennis, 465 So.2d 538, 540 (Fla. 2d DCA 1985). "An employee who is required to travel in connection with his ... employment who suffers an injury while in travel status shall be eligible for benefits ... only if the injury arises out of and in the course of employment...." § 440.092(4), Fla. Stat. (2002). But a traveling employee is within the course and scope of employment "at all times during the trip other than when there is a distinct departure for a non-essential personal errand." N. & L. Auto Parts Co. v. Doman, 111 So.2d 270, 271-72 (Fla. 1st DCA 1959). In contrast to injuries incurred "in the course of amusement ventures,"
[i]njuries incurred during such travel and while attending to the normal creature comforts and reasonably comprehended necessities ... are usually held to be compensable. Compensation in such areas is predicated on the premise that these acts do not take the employee out of the scope of employment because they are necessary to his health and comfort; that although such acts are personal to the employee, nevertheless they are expected incidents of his away-from-home employment and indirectly if not directly benefit the employer; that such acts, therefore, are not in fact deviations from the course of employment.
Id. at 272. When a traveling employee sustains an injury "at a time when the *1185 worker is not actively engaged in the duties of employment," the injury is nevertheless compensable if it "arises out of a risk which is reasonably incidental to the conditions and circumstances of the employment...." Garver v. E. Airlines, 553 So.2d 263, 267 (Fla. 1st DCA 1989) (citations omitted). See also Leonard, 465 So.2d at 541 ("The traveling employee rule presupposes that the traveling employee is on his employer's business while he is eating meals regardless of whether he is actually conducting business at the time."). Thus, as a traveling employee, Mr. Ramirez would have been within the course and scope of his employment, even if he had been bicycling to or from lunch with no intention to wash the laundry en route, because he would have been "attending to [a] normal creature comfort[] and reasonably comprehended necessit[y]" when the accident occurred. N. & L. Auto Parts Co., 111 So.2d at 272.
In the order under review, the judge of compensation claims did not explicitly find that Mr. Ramirez was a traveling employee but did findat least implicitlythat he was on his way to or from a laundromat near the stables at the time of the accident, in order to wash barn laundry, or having already washed it.[2] The circumstantial evidence clearly supports such a conclusion.[3] Specifically, the evidence showed that grooms were required to wash the barn laundry every day they worked; that Lane's End provided buckets, soap, and clotheslines but that there was no washing machine or dryer on the racetrack grounds; that the claimant's supervisors were well aware that grooms washed barn laundry (sometimes along with their own personal laundry) at Swinty's 24-Hour Coin Laundromat "a couple of blocks" away (even though they did not reimburse the grooms); that the accident took place in the intersection of Northeast Eighth Avenue and East Hallandale Beach Boulevard at a time (the accident report was completed at thirty-five past one) when a groom going to or coming from the Laundromat might reasonably travel through the intersection; that the claimant had worked at the stables until about half past eleven that morning and had to be back there by half past two that afternoon; and that an oat sack was found at the accident scene containing three saddle towels, three girth covers, two chamois cloths that "go between the horse and the saddle so that the saddle will not slip," polo bandages and rub rags (along with a shirt, a pair of pants and a pair of socks).
Even if not a traveling employee, Mr. Ramirez proved that he was injured in the course and scope of his employment. Transporting barn laundry to and from the laundromat was part of, not a deviation from, his employment. Although the laundry could have been washed by hand and hung out to dry at the stables, Lane's End required only that it be washed somewhere; and acquiesced in the grooms' practice of washing the barn laundry at the laundromat nearby. See B & B Cash Grocery Stores v. Wortman, 431 So.2d 171, 172-73 (Fla. 1st DCA 1983) (affirming decision that injury arose out of and in the course of employment where claimant, while "travelling between job sites," was injured and the "injury ... occurred while *1186 he was on the employer's payroll, when he was engaged in a common practice of the boys on the ground maintenance crew, doing an activity which he had the implied consent of his supervisor to do, which activity increased the productivity of the employees and was incidentally beneficial to the employer.").
The order under review denied compensation on the supposed authority of the going and coming rule. Codifying the going and coming rule, section 440.092(2), Florida Statutes (2002), provides: "An injury suffered while going to or coming from work is not an injury arising out of and in the course of employment...." But the "going and coming rule ... does not apply in the present case because Mr. [Ramirez] was neither going to work (from home) or coming home from work." Evans v. Handi-Man Temp. Servs., 710 So.2d 132, 134 (Fla. 1st DCA 1998).
The accident did not occur while Mr. Ramirez was traveling to or from work within the meaning of the going and coming rule, since neither the stables nor the laundromat was his home or a venue for purely personal endeavor. The accident happened while he was at work, transporting barn laundry from one work site to another. See Dade County Sch. Bd. v. Polite, 495 So.2d 795 (Fla. 1st DCA 1986) (affirming order compensating teacher for injuries sustained in a vehicular accident while traveling from a track meet to school for the purpose of returning track equipment); Moody v. Baxley, 158 Fla. 357, 28 So.2d 325 (1946) (affirming order compensating employee for injuries sustained while traveling from restaurant where he worked to employer's farm to install a lock for employer). See generally Wilson Cypress Co. v. Miller, 157 Fla. 459, 26 So.2d 441, 442 (1946) (stating "that when the contract of employment contemplates that the employee shall sleep on the employer's premises, as an incident to the employment, and is injured while not engaged on a purely personal mission, the injury is compensable"); Hamilton v. Workers' Comp. Appeals Bd., 231 Cal.Rptr. 917 (App. 2 Dist.1986) (unpublished opinion applying bunkhouse rule and personal comfort doctrine to award benefits to resident employee injured off premises).
Accordingly, the order under review is reversed, and the cause is remanded for further proceedings.
PADOVANO and BROWNING, JJ., CONCUR.
NOTES
[1] See American Airlines v. LeFevers, 674 So.2d 940, 942-43 (Fla. 1st DCA 1996) (affirming order compensating a flight attendant injured during a layover while swimming in a pool at a hotel the airline paid for, saying "the claimant was actively engaged in the duties of her employment ... at the time of her accident"); Garver v. E. Airlines, 553 So.2d 263, 264, 268 (Fla. 1st DCA 1989) (reversing order denying compensation "based upon a finding that ... [a flight attendant] was engaged in a substantial deviation from her employment," where the flight attendant's injury engendering activity during a layoverriding in a car to a social visit immediately following lunchwas not an unreasonable or unforeseeable activity); Gray v. E. Airlines, Inc., 475 So.2d 1288, 1290 (Fla. 1st DCA 1985) (reversing order denying compensation for injuries a flight attendant sustained while playing a pick-up basketball game during a layover because "exercise at a ... [YMCA near the hotel room provided by the airline] should be regarded as... reasonably required for personal health and comfort.").
[2] The order denying compensation finds and concludes: (1) "[T]he use of the Laundromat was solely for the claimant's convenience"; and (2) "The act of going to the Laundromat was not [an] integral part of the employer's successful business practice."
[3] Incapacitated by the accident, Mr. Ramirez did not testify at the hearing below.